# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

04-1326

_____

United States of America,

        Appellee,

v.

William Stonerook,

        Appellant.

\*   Appeal from the United States
\*   District Court for the
\*   District of Nebraska.

\*   [UNPUBLISHED]

_____

Submitted: December 6, 2004
Filed: June 6, 2005

_____

Before BYE, MELLOY, and COLLOTON, Circuit Judges.

_____

PER CURIAM.

William Stonerook was charged with manufacturing or attempting to manufacture 50 grams or more of methamphetamine mixture, possessing ephedrine and pseudoephedrine with intent to manufacture methamphetamine, unlawful possession of a firearm by a previously convicted felon, and criminal forfeiture. He moved to suppress evidence that had been seized from his home, arguing that the underlying search warrant was obtained in violation of Nebraska law regarding telephonic search warrants, and that no reasonable police officer could have relied in

good faith on the validity of the search warrant. The district court[1] denied the motion to suppress.

Stonerook then entered into a plea agreement with the government, agreeing to plead guilty to manufacturing methamphetamine and to the forfeiture charge. The agreement reserved Stonerook's right to appeal the denial of his suppression motion and required the government to seek dismissal of the remaining charges. The agreement also stipulated that Stonerook had accepted responsibility, but not in a timely fashion, and that Stonerook was responsible for at least 50 grams of methamphetamine mixture.

The presentence report ("PSR") prepared by the United States Probation Office recommended a base offense level of 34 based on a quantity of 305.9 grams of actual methamphetamine, a two-level increase because Stonerook possessed a firearm, and a two-level reduction for acceptance of responsibility. With a total offense level of 34 and a Category IV criminal history, Stonerook's resulting guideline range was 210-262 months. At sentencing, the government presented evidence that Stonerook's methamphetamine lab had contained 343 grams of pseudoephedrine, and was therefore capable of yielding 240 grams of methamphetamine if the yield was 80 percent. The government also presented testimony that the yield in Stonerook's lab could have been as high as 90 to 95 percent. The district court found that the actual drug quantity was over 240 grams, and, overruling Stonerook's objection to the PSR's recommended two-level firearm enhancement, found that the total offense level was 34. The district court sentenced Stonerook to 210 months' imprisonment.

On appeal, Stonerook renews his objection to the drug quantity finding and the firearm enhancement. Additionally, he argues that the warrant used to search his

[1]The Honorable Laurie Smith Camp, United States District Judge for the District of Nebraska, adopting the report and recommendations of the Honorable F. A. Gossett, III, United States Magistrate Judge for the District of Nebraska.

home was obtained in violation of Nebraska law because it was sworn in a telephone conversation between the affiant and the judge, and that no reasonable officer could have relied in good faith on the warrant because the supporting affidavit misstated an aspect of the house's location. In a supplemental brief which he has tendered and moved to file, Stonerook argues that his sentence violated his Sixth Amendment rights based on the reasoning of *Blakely v. Washington*, 124 S. Ct. 2531 (2004).

We find no error in the district court's denial of Stonerook's motion to suppress. For federal constitutional purposes, Nebraska law is not determinative, *see United States v. Bell*, 54 F.3d 502, 504 (8th Cir. 1995), and under federal law, affidavits sworn before a judge telephonically are not per se impermissible. *See United States v. Turner*, 558 F.2d 46, 50 (2d Cir. 1977). Reviewing the district court's factual findings for clear error and its legal conclusions de novo, *United States v. Morgan*, 270 F.3d 625, 630 (8th Cir. 2001), we agree with the district court that the totality of the circumstances demonstrated a fair probability that evidence of a crime would be found at Stonerook's home. The affidavit upon which the warrant was based asserted that a male and female had been videotaped buying three boxes of Sudafed tablets at the local Target store, and that the couple left the store in a blue truck registered to Stonerook, who lived at 10825 740 Road in Loomis, Nebraska. The affidavit also asserted that the affiant and another deputy viewed the videotaped transaction and positively identified the male subject as Stonerook, and that Stonerook returned to the Target store on two separate occasions in the early afternoon of October 4, one time buying 150 Sudafed tablets, as well as cotton swabs and razor blades, and the other time buying three boxes of Sudafed tablets. In addition, a confidential informant had informed Sheriff Nutt that Stonerook was making methamphetamine on the property, and a deputy had seen Stonerook take bags to a burn barrel and carry jugs from the house to the garage. This information is more than sufficient to establish a fair probability that evidence of a crime would be found at Stonerook's address.

Stonerook protests that the warrant affidavit erroneously located his home of the south side of the street, rather than the north side of the street, but this misstatement does not render the warrant invalid. The warrant affidavit accurately described Stonerook's house, and there was no similar property on the south side of the street. In addition, the street address was correct in both the warrant and the affidavit. Where it is clear which property was intended in the affidavit, a word processing error does not render a warrant invalid. *See United States v. Jones*, 208 F.3d 603, 608 (7th Cir. 2000); *cf. United States v. Arenal*, 768 F.2d 263, 267 (8th Cir. 1985).

Stonerook's objections to the district court's calculation of the appropriate guideline range are also without merit. The drug quantity determination was supported by testimony about the number of pseudoephedrine pills and blister packs found in Stonerook's home, and by expert testimony about the potential methamphetamine yield from that amount of pseudoephedrine in a lab of Stonerook's size and method. *See* USSG § 2D1.1, comment. (n.12); *United States v. Eide*, 297 F.3d 701, 705 (8th Cir. 2002) (finding that the estimated amount of methamphetamine lab is capable of producing may be determined from quantity of precursors seized, together with expert testimony about their conversion to methamphetamine). *See also United States v. Anderson*, 236 F.3d 427, 429-30 n.5 (8th Cir. 2001) (per curiam) (noting that the estimate of clandestine lab's capability to produce methamphetamine based on quantity of precursors seized at lab need not be limited to yield available from least abundant precursor). The enhancement for a firearm under USSG 2D1.1(b)(1) was also not clearly erroneous, because the court heard evidence that the firearms found in Stonerook's bedroom were in the same room as methamphetamine, a digital scale, and apparent drug records. *See United States v. Cave,* 293 F.3d 1077, 1079 (8th Cir. 2002) (noting that evidence that weapon was found in same location as drugs usually suffices to establish connection between drug offense and weapon for purposes of applying § 2D1.1(b)(1) enhancement).

In light of *United States v. Booker*, 125 S. Ct. 738, 756 (2005), we agree with Stonerook that the district court's application of mandatory sentencing guidelines, combined with its factual findings concerning drug quantity and use of a firearm, was contrary to the Sixth Amendment as applied in *Booker*. However, Stonerook did not object to the district court's application of mandatory sentencing guidelines or a sentence based on facts neither admitted by the defendant nor proved to a jury beyond a reasonable doubt. Reviewing his sentence for plain error, *see United States v. Pirani*, 406 F.3d 543, 549-50 (8th Cir. 2005) (en banc), we do not believe there is a "reasonable probability" that Stonerook would have received a more favorable sentence if the district court had sentenced him under the advisory guidelines scheme announced in *Booker*. His sentence at the low end of the guidelines range is insufficient to establish such a probability, *Pirani*, 406 F.3d at 553, and we find nothing in the record to indicate that the court would have imposed a more lenient sentence under the advisory guidelines. The court declined to depart downward, noting that the defendant's criminal history was not overstated, and observed that the two-level adjustment Stonerook received for acceptance of responsibility was "a generous adjustment" in this case, because jury costs of $2,016.78 already had been incurred when the defendant decided to plead guilty. "'[W]here the effect of the error on the result in the district court is uncertain or indeterminate – where we would have to speculate – the appellant has not met his burden of showing a reasonable probability that the result would have been different but for the error.'" *Id.* (quoting *United States v. Rodriguez*, 398 F.3d 1291, 1301 (11th Cir. 2005)).

We grant Stonerook's motion to file a supplemental brief, and we affirm.

_____