# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-3955

_____

| | | |
|---|---|---|
| Yvette Walker, | * | |
| | * | |
| Plaintiff/Appellant, | * | |
| | * | |
| v. | * | |
| | * | |
| David Bonenberger, DeAndre Boyd, | * | |
| In Official and Individual Capacity, | * | |
| City of St. Louis, A Municipal | * | |
| Corporation, Mary E. Nelson, Susan | * | Appeal from the United States |
| C. J. Rollins, Bart Saracino, Michael J. | * | District Court for the |
| Quinn, Francis G. Slay, | * | Eastern District of Missouri. |
| | * | |
| Defendants/Appellees, | * | |
| | * | |
| Timothy E. Reagan, | * | |
| | * | |
| Defendant, | * | |
| | * | |
| Circuit Attorney Office, | * | |
| | * | |
| Movant Below. | * | |

_____

Submitted: October 14, 2005
Filed: February 24, 2006

_____

Before RILEY, JOHN R. GIBSON, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Yvette Walker brought an action pursuant to 42 U.S.C. § 1983 against police officers from the city of St. Louis, alleging an unreasonable search of her apartment and seizure of her person pursuant to an invalid warrant. She also advanced claims against the St. Louis Board of Police Commissioners for failing adequately to train and supervise police officers. The district court[1] granted summary judgment for the defendants on all of Walker's claims, and we affirm.

I.

This case involves allegations of an unlawful search and seizure at an apartment in St. Louis where Walker resided. Walker's apartment was located at 2026 Withnell Avenue on the second floor of the building. Investigation conducted in connection with the disputed search and seizure determined that another party residing in the same building, Daryl Stanton, was involved in drug trafficking. According to Walker's evidence, Stanton lived in an apartment with living space on the third floor, but with an entrance on the second floor and an internal stairway leading to the third floor. Walker asserts that officers searched her apartment and detained her for an hour, but actually intended to search Stanton's apartment, and that the search and seizure in her apartment violated the Fourth Amendment.

On September 5, 2001, Officer David Bonenberger of the St. Louis Police Department obtained a warrant to search "2026-A Withnell, described as the second floor apartment of the brown brick, two-story [d]welling of brick construction." The affidavit in support of the warrant explained that a confidential source, who had proven reliable in the past, informed Bonenberger that a person known as "Yellow"

_____

[1]The Honorable Henry E. Autrey, United States District Judge for the Eastern District of Missouri.

transported large amounts of heroin and crack cocaine to 2100 Withnell Avenue in St. Louis. The source further explained that "Yellow" gave a quantity of the drugs to a person known as "Nick," who resided at "2026-A Withnell in the second floor apartment." "Yellow" was said to direct customers to "Nick" at 2026 Withnell to obtain cocaine or heroin after "Yellow" accepted payment at 2100 Withnell.

Bonenberger's affidavit recounted that he conducted surveillance at 2100 Withnell and 2026 Withnell on four dates in August and September 2001. He described 2026 Withnell as "brown brick construction two-story, facing north." He explained that "[a] wooden staircase ascends to the second floor rear porch which is attached to the rear (south side) of the building," and that "[t]he entry door to the second floor apartment is accessible by ascending the wooden staircase and is located on the rear (south side) of the building." Bonenberger stated that during his surveillance, he observed "Yellow" direct pedestrians from 2100 Withnell to 2026 Withnell, where they ascended the outside staircase and proceeded to "knock at the door to the second floor apartment." The affiant stated that he then observed hand-to-hand transactions between "Nick" and the pedestrians "through the door." Based on this information, Bonenberger stated his belief that crack cocaine and heroin were "being kept in and sold from . . . the second floor apartment of 2026 Withnell."

When officers arrived at 2026 Withnell Avenue on September 5 to execute the warrant, they observed Daryl Stanton leave the building and conduct several narcotics transactions on the sidewalk. Officers approached Stanton, at which time he removed a plastic baggie from his pocket and dropped it to the ground. Police placed Stanton under arrest and asked where he lived. He replied that he lived in the second floor apartment at 2026 Withnell Avenue.

Bonenberger and Officer DeAndre Boyd then walked to the second floor landing at 2026 Withnell. Two doors were accessible from the second floor landing. Although the search warrant referred to the subject address as 2026-A, neither door

on the second floor landing was marked with the letter "A." The record is confusing as to the marking of the doors,[2] but however the doors were labeled, the parties agree that Bonenberger was on the second floor landing, that he used a sledgehammer to break down the door on the left, and that this was the door to Walker's apartment. (Appellant's App. at 35-36, 39-40; Doc. # 35.3, Bonenberger Aff. at 2-3; Doc. # 35.4, Boyd Aff. at 1-3). Walker and her then-boyfriend, Henry Stokes, were inside the apartment.

The parties dispute what happened next. Bonenberger testified that Walker told him privately that Stanton had forced her to let Stanton use her apartment and telephone while Stokes was at work. Walker denies making any such statement, and taken in the light most favorable to Walker, the evidence shows that Walker and Stokes merely informed the officers who entered the apartment that Stanton resided on the third floor. Walker and Stokes averred that Officer Boyd conducted a brief search of Walker's apartment. Walker testified, based on her inference from noise she heard from the upstairs apartment, that the officers then departed her apartment to search the third-floor apartment. One officer remained with Walker and Stokes, and approximately one hour later, other officers returned. For some part of that hour, according to Walker and Stokes, officers detained Stanton and his girlfriend in Walker's apartment. Walker states that after an hour of detention, Bonenberger apologized to her for breaking into "the wrong apartment," and explained how she could have her door repaired at the city's expense.

---

[2]Photographs of the landing submitted by Walker show, from left to right, a window, a door with a small window, and a solid door. (Pl.'s Ex. 6, 7, Appellant's App. at 59, 60). Walker asserts in an affidavit that her door was marked with the number "2." Neither door shown in aforementioned photographs, however, is marked with a number or letter. Another exhibit does show a photograph of a door marked number "2," (Pl.'s Ex. 8, Appellant's App. at 61), but this door is solid, and unlike the solid door on the second floor landing (which is to the right of the door with the small window), the door marked number "2" is depicted to the right of a window.

Walker brought a § 1983 action against officers Bonenberger and Boyd, claiming that they violated her rights under the Fourth and Fourteenth Amendments by searching her apartment without a valid warrant and by unreasonably searching her apartment and seizing her person even after they discovered that they had entered the wrong unit. Walker also sued the St. Louis Board of Police Commissioners for allegedly failing to train and supervise its officers adequately.

During discovery, a dispute arose concerning Walker's desire to obtain information from the St. Louis Circuit Attorney's Office. The circuit attorney had declined to prosecute Stanton based on the events of September 5. Walker believes the meaning of "Ref. 77," an internal code listed on an official "Information Disposition Report," will reveal the reason why the circuit attorney decided not to prosecute Stanton, and that this information would be relevant to her claim. Through a subpoena *duces tecum*, Walker sought from the chief warrant officer for the circuit attorney's office the meaning of "Ref. 77," but the circuit attorney moved to quash the subpoena, and the district court granted the motion.

The district court then granted the defendants' motion for summary judgment on the § 1983 claims. With respect to the search warrant, the district court concluded that Walker failed to overcome the presumption of validity regarding Bonenberger's affidavit in support of the warrant. The court rejected Walker's argument that the identification of her apartment as "2026-A" rendered the warrant invalid, because the warrant also specifically authorized a search of the "second floor" apartment. The court determined that the search of Walker's apartment was reasonable, because based on information obtained from the confidential informant, their own surveillance, and Stanton's assertion that he lived in the second floor apartment, the officers reasonably could have concluded that illegal narcotics trafficking was conducted from Walker's apartment. Also noting that Walker could not prove damages resulting from the search, the court ruled that Bonenberger and Boyd were entitled to summary judgment. The court also concluded that Walker could not

sustain her claim against the Board of Police Commissioners, because the officers had not violated her constitutional rights.

## II.

We review the district court's grant of summary judgment *de novo*, reviewing "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," and considering all reasonable inferences in the light most favorable to the non-moving party. Fed. R. Civ. P. 56(c). After undertaking that review, we conclude as a matter of law that the evidence, taken in the light most favorable to Walker, cannot establish a violation of her rights under the Fourth and Fourteenth Amendments.

Walker argues that the search warrant obtained by Bonenberger was invalid, because it did not describe the place to be searched with particularity. She assumes that the police actually intended to search the third-floor apartment in which Stanton ostensibly resided, and that the warrant's description of a "second floor apartment" failed accurately to describe the place to be searched. *See Maryland v. Garrison*, 480 U.S. 79, 85 (1987). Walker contends that the evidence would support a finding that Bonenberger failed to take reasonable steps to investigate which apartment was the target of the investigation before obtaining a warrant to search the non-existent apartment "A."

We agree with the district court that the police did not violate Walker's rights under the Fourth Amendment. Regardless whether Bonenberger concluded one hour *after* the search of Walker's apartment that police had searched the "wrong apartment," Walker has not created a genuine issue of fact concerning whether police had probable cause to search Walker's apartment at the time the warrant was issued, *see id.*, or whether they reasonably relied on the warrant to search Walker's apartment. Bonenberger averred in his affidavit that during surveillance conducted

-6-

before the search, he observed drug transactions in the doorway of the second-floor apartment. He stated that these events took place at the left door, (Doc. # 35.3, Bonenberger Aff. at 2), that is, the door to Walker's apartment. These observations, together with the information from the confidential source that drugs were distributed from the "second floor apartment" at 2026 Withnell, established probable cause to search Walker's apartment. That the warrant erroneously identified the unit at "2026-A Withnell," when Walker's apartment was not labeled with an "A," does not render the warrant invalid. *See Steele v. United States*, 267 U.S. 498, 503 (1925) ("It is enough if the description is such that the officer with a search warrant can, with reasonable effort, ascertain and identify the place intended."); *United States v. Jones*, 208 F.3d 603, 608 (7th Cir. 2000); *United States v. Stonerook*, 134 F. App'x. 982, 984 (8th Cir. 2005) (per curiam) (unpublished).

We disagree with Walker's suggestion that this case is like *Maryland v. Garrison*, where it was determined that police entered a residence that they did not have probable cause to search. In that scenario, we consider whether the officers knew or should have known that the warrant did not particularly describe the place to be searched. *See Garrison*, 480 U.S. at 85. Here, the officers searched a residence for which they *did have* probable cause, based on Bonenberger's observation of transactions at Walker's door and the information from a confidential source about drug dealing at the second-floor apartment.

To undermine the validity of the warrant, therefore, Walker must show that Bonenberger's sworn statements in the affidavit supporting the warrant were deliberately false or made with reckless disregard for the truth. *Franks v. Delaware*, 438 U.S. 154, 171 (1978). Although Walker denies that Daryl Stanton ever conducted drug transactions from her apartment, this bare assertion is insufficient to make the requisite substantial preliminary showing. *E.g.*, *United States v. Moore*, 129 F.3d 989, 992 (8th Cir. 1997). Even if Bonenberger later concluded that he was mistaken about the doorway in which he had observed "Nick" conduct drug

transactions, there is no showing that he deliberately or recklessly misrepresented his observations at the time he applied for the search warrant. Accordingly, the district court was correct to grant summary judgment for the defendants on the claim that the warrant was defective. *See Hunter v. Namanny*, 219 F.3d 825, 829-30 (8th Cir. 2000); *Bagby v. Brondhaver*, 98 F.3d 1096, 1099 (8th Cir. 1996). Because the warrant was valid, and because nothing police learned from Stanton undermined their objectively reasonable belief that Walker's apartment was connected to drug trafficking, the search was reasonable. *See Garrison*, 480 U.S. at 88.

We also conclude that there is no genuine issue of fact concerning whether the officers reasonably detained Walker for a period of approximately one hour during the course of the search and related activities. Taken in the light most favorable to Walker, the evidence is that shortly after the entry to her apartment, Walker and Stokes informed police that Stanton (who had just been arrested outside the building) resided in the third-floor apartment. Walker contends that police then departed her apartment to search the third-floor apartment, but left an officer to monitor Walker while she sat, unrestrained, on her couch. An hour later, according to her evidence, Bonenberger returned and apologized for searching the "wrong apartment."

These facts do not establish an unreasonable seizure. Police had a valid warrant for Walker's apartment, and it was permissible to detain the occupants during a reasonable search of that apartment. *Muehler v. Mena*, 125 S. Ct. 1465, 1470 (2005); *Michigan v. Summers*, 452 U.S. 692, 705 (1981). There is no evidence that police knew immediately upon entering Walker's apartment that it was the "wrong apartment." When Walker and Stokes claimed that the drug trafficker suspected of using Walker's apartment to distribute drugs actually lived on the third floor, the officers were not obliged immediately to accept those representations and abandon the investigation of the apartment for which they had a warrant. Even assuming Walker's version of the facts, it was reasonable for the officers to investigate and verify the statements of Walker and Stokes by searching the third-floor apartment

-8-

before terminating the search of Walker's apartment. Stanton, after all, had informed police that he lived in the "second-floor apartment," not the "third-floor apartment," and it was reasonable for police to guard against the possibility that Walker and Stokes provided misinformation in order to create an opportunity to destroy evidence or flee the scene.

Finally, Walker argues that the district court erred in granting the circuit attorney's motion to quash Walker's subpoena *duces tecum* for an explanation of the internal code "Ref. 77." We review a district court's motion to quash for abuse of discretion, recognizing "that the court has a range of choice, and its decision will not be disturbed as long as it stays within that range, is not influenced by any mistake of law or fact, or [does not make] a clear error of judgment in balancing relevant factors." *Miscellaneous Docket Matter #1 v. Miscellaneous Docket Matter #2*, 197 F.3d 922, 925 (8th Cir. 1999) (internal quotations omitted). Even assuming that the meaning of the internal code would provide some insight to why Stanton was not prosecuted, we see no abuse of discretion. There is no showing that the reason why the circuit attorney chose not to prosecute Stanton is relevant to the reasonableness of the search and seizure in Walker's apartment. The reasonableness of the police conduct is determined by objective standards in light of historical facts. Evidence concerning the prosecutor's subjective evaluation of the case against Stanton and corresponding exercise of prosecutorial discretion would not be relevant to the issues raised under the Fourth Amendment.

For the foregoing reasons, we conclude that the officers did not violate Walker's constitutional rights. Because the officers committed no constitutional violation, the district court also was correct to dismiss the claim against the Board of Police Commissioners. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam).

\*     \*     \*

The judgment of the district court is affirmed.

_____