# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-2708

_____

William Cavataio; Mary Lou Cavataio,     *
   *
       Appellants,     *
   *
       v.     *    Appeal from the United States
   *    District Court for the
City of Bella Villa; Chief of Police     *    Eastern District of Missouri.
Edward Locke, Jr., in his individual     *
capacity,     *
   *
       Appellees.     *

_____

Submitted: April 16, 2009
Filed: July 6, 2009

_____

Before RILEY, BENTON, and SHEPHERD, Circuit Judges.

_____

RILEY, Circuit Judge.

William Cavataio (William) and Mary Lou Cavataio (Mary Lou) (collectively, Cavataios), filed a suit under 42 U.S.C. § 1983 and Missouri state law, against the City of Bella Villa, Missouri (City), and the City's Chief of Police, Edward Locke Jr. (Chief Locke). The Cavataios asserted constitutional claims against Chief Locke and the City, alleging Chief Locke (1) used excessive force against William during William's arrest, and (2) violated Mary Lou's substantive due process rights by touching her breast. The Cavataios also asserted state law tort claims against Chief Locke and the City for assault and battery and indecent assault and battery. The

district court[1] granted summary judgment to Chief Locke and the City on all claims, except Mary Lou's state law claim against Chief Locke. Following a trial on Mary Lou's state law claim, the jury found in favor of Chief Locke. The Cavataios appeal (1) the district court's grant of summary judgment to Chief Locke and the City on the Cavataios' constitutional claims, and (2) certain evidentiary rulings of the district court during the trial. We affirm.

## I.    BACKGROUND
### A.    Factual Background

William and Mary Lou are husband and wife. They reside at 709 Dallas Drive in Bella Villa, Missouri. In late 2005 or early 2006, the Cavataios began to store materials and debris on the driveway of their residence. The City claims its health and sanitation director sent a letter to Mary Lou in February 2006, informing her she was in violation of a city ordinance and requesting that she remove the materials from her driveway. Mary Lou denies receiving this letter. The health and sanitation director sent a certified letter to Mary Lou in March 2006, but the letter was returned unclaimed. On March 30, 2006, the health and sanitation director sent an arrest notification to Mary Lou charging her with failing to comply with the city ordinance. Mary Lou denies receipt of the arrest notification.[2]

In May 2006, the health and sanitation director asked Chief Locke to speak with the Cavataios about the materials in their driveway. Chief Locke claims he went to the Cavataios' residence in May and requested William remove the materials. Chief

---

[1]The Honorable Stephen N. Limbaugh, Sr., United States District Judge for the Eastern District of Missouri, now retired.

[2]At her deposition, Mary Lou first denied receiving any notification from the City informing her she was in violation of a city ordinance. Later in the deposition, Mary Lou acknowledged she had received a letter from the City "at some time" regarding the condition of her property.

Locke maintains William told him he would have the debris cleared away in the next few weeks.[3]

On August 19, 2006, Chief Locke went to the Cavataios' residence because the Cavataios had failed to remove the materials from their driveway. Chief Locke approached William after observing William load a cooler into the back seat of a vehicle. Chief Locke placed William under arrest for violating the city ordinance and refusing to remove the materials. William, who was 75 years old at the time of the incident, did not resist arrest. Chief Locke handcuffed William's hands behind his back. William alleges Chief Locke applied the handcuffs too tightly around William's wrists, pushed down on the handcuffs, and kneed William when placing him in the patrol car.

Once inside the patrol car, William complained of back pain and told Chief Locke he had a "bad back." William previously had suffered a back injury from a fall, but William did not inform Chief Locke of those injuries before the arrest. In response to William's complaint of pain, Chief Locke called an ambulance. The paramedics arrived and assessed William's condition. William refused further treatment from the paramedics and signed a refusal form. Chief Locke then stated William was either going to go to the hospital or to jail. William requested that Mary Lou take him to the emergency room.

Mary Lou did not witness William's arrest and did not come out of the house until after William was seated in the patrol car. After William refused treatment from the paramedics, William entered the passenger side of the Cavataios' vehicle, and Mary Lou got into the driver's seat. At her deposition, Mary Lou testified Chief Locke stood beside the vehicle, leaning against the side mirror. Mary Lou told Chief Locke not to do that because he was going to break off the mirror. Mary Lou alleges Chief Locke then reached into the car, grabbed Mary Lou's left breast, and squeezed

---

[3]The Cavataios deny Chief Locke visited their residence in May 2006.

it. Mary Lou claims she "smacked" Chief Locke's hand. William did not see Chief Locke touch Mary Lou's breast, and Mary Lou did not tell William about Chief Locke grabbing her breast until a few days later.

After Chief Locke allegedly touched Mary Lou's breast and stepped away from the vehicle, Mary Lou began to drive toward the hospital. Chief Locke followed. After a few blocks, Chief Locke turned on his siren and pulled over the Cavataios. Chief Locke issued three tickets to Mary Lou for (1) failure to signal, (2) no insurance, and (3) invalid plates. Mary Lou testified she was so "shook up" that she drove home and did not take William to the hospital that day.

### B. Procedural History

On November 9, 2006, the Cavataios filed a complaint in the district court against Chief Locke and the City. The complaint alleged (1) Chief Locke used excessive force against William during his arrest, in violation of the Fourth Amendment; (2) Chief Locke's excessive use of force against William constituted assault and battery under Missouri law; (3) Chief Locke violated Mary Lou's substantive due process rights by touching her breast; (4) Chief Locke's touching of Mary Lou's breast constituted indecent assault and battery under Missouri law; and (5) the City was liable for Chief Locke's constitutional violations under theories of municipal liability and respondeat superior, and was liable for Chief Locke's violations of state law under a theory of respondeat superior. In September 2007, the district court granted the Cavataios' voluntary motion to dismiss their state law claims against the City.

In October 2007, Chief Locke and the City moved for summary judgment on all of the Cavataios' remaining claims. On April 10, 2008, the district court granted in part, and denied in part, the motion for summary judgment. The district court granted summary judgment in favor of Chief Locke on William's excessive force and state law claims, and on Mary Lou's substantive due process claim, and granted summary judgment in favor of the City on each of the Cavataios' municipal liability

-4-

claims. The district court denied summary judgment on Mary Lou's claim against Chief Locke for indecent assault and battery, and that claim proceeded to trial.

During discovery, the Cavataios endorsed Lieutenant Anthony Russo (Lieutenant Russo) as an expert witness. Chief Locke and the City moved to strike the Cavataios' expert witness endorsement. In December 2007, the district court granted in part, and denied in part, the motion to strike. The district court determined Lieutenant Russo's testimony was "admissible insofar as it relate[d] to his profession and experience as a law enforcement officer." After the district court granted summary judgment on all claims other than Mary Lou's state law claim, Chief Locke filed a motion in limine, renewing his motion to strike Lieutenant Russo's testimony in its entirety and arguing the testimony did not relate to Mary Lou's state law claim. The district court granted Chief Locke's motion in limine. Chief Locke also moved in limine to exclude any evidence, testimony, and argument relating to (1) William's claims against Chief Locke, (2) William's alleged injuries and medical treatment, and (3) the traffic tickets issued to Mary Lou. The district court granted Chief Locke's motion in limine.

The trial on Mary Lou's state law claim began on May 7, 2008. The following day, the jury returned a verdict in favor of Chief Locke, and the district court entered judgment. The district court denied Mary Lou's motion for a new trial on June 25, 2008, and the Cavataios filed a notice of appeal on July 25, 2008.

On appeal, the Cavataios argue the district court erred in (1) granting summary judgment in favor of Chief Locke on William's excessive force claim, (2) granting summary judgment in favor of Chief Locke on Mary Lou's substantive due process claim, (3) granting summary judgment in favor of the City on the Cavataios' municipal liability claims, (4) excluding evidence at the trial of Chief Locke's force against William and other events of that day, and (5) excluding the expert testimony of Lieutenant Russo.

## II. DISCUSSION

### A. William's Excessive Force Claim

In granting summary judgment, the district court found Chief Locke's conduct during William's arrest was objectively reasonable as a matter of law, even accepting as true William's allegations that Chief Locke applied the handcuffs too tightly and kneed William when placing him in the patrol car. The district court further reasoned, "The absence of any substantial injury arising from the alleged 'excessive force,' coupled with William's ability to independently exit and stand outside the patrol car, and his refusal of same-day medical treatment" supported the court's finding.

"We review a district court's grant of summary judgment de novo, viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party." Reed v. City of St. Charles, 561 F.3d 788, 790 (8th Cir. 2009) (citation omitted). "We will affirm if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." Id. (citing Fed. R. Civ. P. 56(c)).

"We analyze Fourth Amendment excessive force claims under a reasonableness standard to determine whether, in light of the facts and circumstances, the officer's actions were objectively reasonable." Gill v. Maciejewski, 546 F.3d 557, 562 (8th Cir. 2008) (citing Graham v. Connor, 490 U.S. 386, 396 (1989)). "[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Graham, 490 U.S. at 396 (citing Terry v. Ohio, 392 U.S. 1, 22-27 (1968)). "[W]hile this court has stated '[i]t remains an open question in this circuit whether an excessive force claim requires some minimum level of injury,' a de minimus use of force or injury is insufficient to support a finding of a constitutional violation." Crumley v. City of St. Paul, 324 F.3d 1003, 1007 (8th Cir. 2003) (quoting and citing Hunter v. Namanny, 219 F.3d 825, 831 (8th Cir. 2000)).

Viewing the facts in the light most favorable to William, we agree with the district court that Chief Locke's actions during William's arrest were objectively reasonable. Chief Locke's de minimus use of force under these circumstances is insufficient to rise to the level of a Fourth Amendment violation. While William alleges he suffered back pain as a result of the arrest, (1) William did not inform Chief Locke of William's prior back injury before Chief Locke placed William in the patrol car; (2) William refused treatment from the paramedics when Chief Locke called an ambulance after learning of the back pain; and (3) other than William's deposition testimony that he sought medical care the day after the arrest, William presented no medical evidence establishing a physical injury as a result of the arrest. See Wertish v. Krueger, 433 F.3d 1062, 1067 (8th Cir. 2006) (citations omitted) (reasoning, "relatively minor scrapes and bruises and the less-than-permanent aggravation of a prior shoulder condition were *de minimis* injuries that support[ed] the conclusion that [the officer] did not use excessive force" against an arrestee); Curd v. City Court of Judsonia, 141 F.3d 839, 841 (8th Cir. 1998) (citations omitted) (stating, "[e]ven if seizing [the arrestee's] arm and turning her body was unnecessary to effect the arrest, we can not conclude that this limited amount of force was objectively unreasonable," especially where there was no allegation or evidence of injury or physical pain); Foster v. Metro. Airports Comm'n, 914 F.2d 1076, 1082 (8th Cir. 1990) (explaining "allegations of pain as a result of being handcuffed, without some evidence of more permanent injury, are [not] sufficient to support [a] claim of excessive force"). We affirm the district court's summary judgment in favor of Chief Locke.[4]

## B.    Mary Lou's Claims

Mary Lou challenges the district court's grant of summary judgment in favor of Chief Locke on Mary Lou's substantive due process claim and certain evidentiary rulings the district court made during the jury trial on Mary Lou's state law claim

---

[4]Because we find Chief Locke did not violate William's constitutional rights, we need not address the parties' arguments relating to Chief Locke's entitlement to qualified immunity.

against Chief Locke. We will address the evidentiary issues first because, as explained below, our resolution of the evidentiary issues impacts our resolution of the substantive due process claim.

### 1. Totality of the Circumstances Evidence

Mary Lou asserts the district court abused its discretion in excluding evidence at trial of the circumstances of Chief Locke's encounter with the Cavataios, including: "(a) Chief Locke's violence against William Cavataio, and (b) the rest of the totality of the circumstances." Mary Lou argues exclusion of this evidence was an abuse of discretion "because that evidence made the squeezing of Mary Lou Cavataio's breast more probable than not, and in a case turning on credibility[,] the exclusion of that evidence was prejudicial."

"A district court is possessed with broad discretion in its evidentiary rulings made at trial, and we will reverse only if they amount to 'a clear and prejudicial abuse of discretion.'" Gill, 546 F.3d at 562 (quoting Lovett ex rel. Lovett v. Union Pac. R.R. Co., 201 F.3d 1074, 1081 (8th Cir. 2000)). "'Only when the evidence excluded is of such a critical nature that there is no reasonable assurance that the jury would have reached the same conclusion had the evidence been admitted has a district court so abused its discretion.'" Id. (internal marks omitted) (quoting Stephens v. Rheem Mfg. Co., 220 F.3d 882, 885 (8th Cir. 2000)).

Before the trial began, the district court granted Chief Locke's motions in limine, excluding evidence, testimony, and argument relating to (1) William's claims against Chief Locke, (2) William's alleged injuries and medical treatment, and (3) the traffic tickets issued to Mary Lou. On the morning the trial began, Mary Lou's counsel requested that the district court reconsider its rulings. Mary Lou's counsel proposed to have William and Chief Locke briefly testify to the events that led up to Mary Lou's allegations, including testimony that an ambulance was called to the Cavataios' residence. Mary Lou's counsel also requested permission to present evidence of the tickets Chief Locke issued to Mary Lou. Counsel for both Mary Lou

and Chief Locke agreed it was appropriate to inform the jury of William's arrest. The district court ruled the subsequent issuance of tickets to Mary Lou was not admissible, because this evidence was not relevant to Mary Lou's indecent assault and battery claim. However, the district court "allow[ed] the evidence to come in that [William] was going to a hospital but not for anything having to do with an arrest or any conflict that [William] may have had with [Chief Locke] in any way."

Despite the district court's rulings, the jury was informed of the "totality of the circumstances" leading up to Chief Locke's alleged indecent assault and battery of Mary Lou. For instance, during Mary Lou's testimony, when asked when she first learned of the dispute regarding the materials on her driveway, Mary Lou volunteered the following information: "August 19th when [Chief Locke] came up and . . . attacked my husband." Mary Lou also testified that when she came outside of the house that day, she saw William sitting in the back seat of the police cruiser "very uncomfortably looking, like leaning back." Mary Lou stated William was complaining of a sore back and "laid down on the grass [because] his back was hurting so bad" after Chief Locke took off the handcuffs. Mary Lou testified she retrieved an ice pack from the house to put on William's sore back and decided she would drive William to the hospital due to William's back pain. Likewise, William testified that when Chief Locke placed William in the patrol car, "[Chief Locke] kind of got me off balance and I was halfway, hurt my back." William gave the following testimony regarding Chief Locke's actions while Mary Lou and William sat in the Cavataios' vehicle: "He was outside the door, I was sitting there in the car and passenger seat and he asked if he hurt me."

We first note counsel for the Cavataios conceded at oral argument that counsel did not make an offer of proof at trial of the additional evidence and testimony counsel would have offered absent the district court's adverse ruling on Chief Locke's motion in limine. This failure to make an offer of proof constitutes a failure to preserve the issue for our review. See Murphy v. Mo. Dept. of Corr., 506 F.3d 1111, 1117 (8th Cir. 2007) ("One of the most fundamental principles in the law of evidence is that in

order to challenge a trial court's exclusion of evidence, an attorney must preserve the issue for appeal by making an offer of proof." (quoting Dupre v. Fru-Con Eng., Inc., 112 F.3d 329, 336 (8th Cir. 1997)).

Even if counsel had made an appropriate offer of proof, we nevertheless would conclude the district court did not abuse its considerable discretion in excluding evidence of Chief Locke's alleged "violence" against William and the "totality of the circumstances."  Based on the above testimony, the only "totality of the circumstances" evidence the jury did not hear was that an ambulance was called to the Cavataios' residence and Chief Locke subsequently issued three tickets to Mary Lou. This evidence was minimally relevant, if relevant at all.  Mary Lou fails to demonstrate "a clear and prejudicial abuse of discretion," Gill, 546 F.3d at 562, as a result of the district court's exclusion of this evidence, because the evidence simply was not "of such a critical nature" to Mary Lou's indecent assault and battery claim that no reasonable jury would have reached the same conclusion had the evidence been admitted.  See id.

### 2.    Lieutenant Russo's Expert Testimony

Mary Lou next argues the district court abused its discretion in excluding the expert testimony of Lieutenant Russo.  "We review the district court's decision to exclude expert testimony under an abuse of discretion standard."  Schmidt v. City of Bella Villa, 557 F.3d 564, 570 (8th Cir. 2009) (citing Gen. Elec. Co. v. Joiner, 522 U.S. 136, 143 (1997)).

Mary Lou "concede[s] that expert testimony [was] not required for a jury to figure out that a policeman should not squeeze an elderly woman's breast," but Mary Lou maintains Lieutenant Russo's testimony "would have assisted the trier of fact in understanding the totality of the circumstances."  We agree Lieutenant Russo's testimony was not necessary to prove Mary Lou's claim, and the testimony was not helpful to the trier of fact on any material issue.  Because we concluded above that the district court did not abuse its discretion in excluding the "totality of the

circumstances" evidence, we similarly find the district court did not abuse its discretion in excluding Lieutenant Russo's testimony.

### 3. Substantive Due Process Claim

Mary Lou also appeals the district court's grant of summary judgment in favor of Chief Locke on Mary Lou's substantive due process claim. In the order granting summary judgment, the district court stated, "[W]hile the Court is disturbed by Locke's conduct as it is alleged, it does not rise to the level of that afforded Constitutional protection." The district court determined Mary Lou's claim could adequately be addressed pursuant to state law.

We review the grant of summary judgment de novo, viewing the facts in the light most favorable to Mary Lou, to determine whether there were any material issues of fact precluding summary judgment. See Reed, 561 F.3d at 790. "The Eighth Circuit has recognized a substantive due process violation in some instances of sexual misconduct by police officers." Schmidt, 557 F.3d at 574 (citing Rogers v. City of Little Rock, 152 F.3d 790 (8th Cir. 1998)). "The standard for evaluating a substantive due process claim is whether the alleged 'behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" Id. (quoting Rogers, 152 F.3d at 797). "The Supreme Court has been reluctant to expand the protections afforded by substantive due process 'because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended,' and it has only done so with the 'exercise [of] the utmost care.'" Hawkins v. Holloway, 316 F.3d 777, 780-81 (8th Cir. 2003) (quoting Collins v. City of Harker Heights, 503 U.S. 115, 125 (1992)). "[T]he Due Process Clause 'does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society.'" Collins, 503 U.S. at 128 (quoting Daniels v. Williams, 474 U.S. 327, 332 (1986)).

Mary Lou suggests the facts in her case are similar to the facts from two prior opinions of our court, Rogers, and Haberthur v. City of Raymore, 119 F.3d 720 (8th Cir. 1997), wherein our court found police officers' conduct met the "shocks the conscience" standard. In Rogers, a police officer stopped a woman for a broken tail light. Rogers, 152 F.3d at 793. When the woman told the officer her proof of insurance was at her house, the officer followed her home and entered her house. Id. The officer told the woman "he would let her off but that she owed him one," and the officer told her to undress, pushed her onto the bed and had sexual intercourse with her. Id. at 793-94. The Rogers court held the district court did not err in finding the officer's actions in Rogers were "shocking to the conscience." Id. at 797. The court explained that Rogers "involve[d] an egregious, nonconsensual entry into the body which was an exercise of power without any legitimate governmental objective." Id.

In Haberthur, an officer followed a woman to her house in a marked vehicle and told the woman he should give her a ticket for speeding, but the officer drove away without issuing a ticket. Haberthur, 119 F.3d at 721. The next month, the officer, in uniform, showed up at her place of work, reminded her of their encounter, and told her he would wait for her and give her a ticket when she left work. Id. Later that month, the officer, while on duty in his uniform, again showed up at the woman's place of work. Id. The officer went up to the woman, placed his hands under her sweatshirt and fondled her breasts, ran his arms down her sides, placed his arm around her neck, and asked her to go into the back room with him. Id. Following the incident at her place of work, the officer repeatedly drove past the woman's house, sometimes driving a police car. Id. The Haberthur court found the officer's conduct was sufficiently egregious to shock the conscience and reversed the district court's grant of summary judgment in favor of the officer on the substantive due process claim. Id. at 722, 724. The court stated,

> The conduct that [the woman] alleged in her complaint, that [the officer] reached his hand underneath her shirt and fondled a private erogenous

-12-

area and moved his hands along and caressed her body while making sexually suggestive remarks, was intrusive, demeaning, and violative of her personal integrity. The implication for further sexual contact was in the larger context of threatening adverse official action by way of a ticket and following her in his police car.

Id. at 724. The Haberthur court distinguished the facts in Haberthur from the facts in Reeve v. Oliver, 41 F.3d 381, 382 (8th Cir. 1994), wherein our court found an animal control officer's rubbing of a woman's back while staring at her chest did not amount to a constitutional violation. Haberthur, 119 F.3d at 723.

We need not determine whether the district court erred in finding Mary Lou's allegations did not meet the "shocks the conscience" threshold, because counsel for the Cavataios conceded at oral argument that if we were to affirm the district court's summary disposition of William's excessive force claim, and the district court's exclusion of the "totality of the circumstances" evidence, Mary Lou would be precluded from bringing her constitutional claim. Counsel acknowledged that Mary Lou's burden of proof on her state law indecent assault and battery claim was lower than the burden of proof on her constitutional claim. Because the jury found Mary Lou did not meet the lower burden of proof on her state law claim, counsel further admitted Mary Lou could not succeed on her constitutional claim without the excluded evidence.

Mary Lou's substantive due process claim arose out of the same allegations as her indecent assault and battery claim, and the evidence to support Mary Lou's substantive due process claim would have been the same evidence offered at trial. At the close of evidence, the district court instructed the jury that it must return a verdict in favor of Chief Locke on Mary Lou's indecent assault and battery claim, unless:

*First*, defendant Chief Edward Locke, Jr. intentionally squeezed Mary Lou Cavataio's breast, and;

*Second*, that conduct would offend a reasonable sense of personal dignity; and

*Third*, defendant Chief Edward Locke, Jr. took such liberty without plaintiff Mary Lou Cavataio's consent and against her will, and

*Fourth*, plaintiff Mary Lou Cavataio was thereby damaged.

The jury found Mary Lou did not meet her burden of proof and found in favor of Chief Locke. Failing to meet her state indecent assault and battery claim burden of proof, Mary Lou likewise should fail to meet her substantive due process claim burden of proof.

Assuming for the sake of argument that the district court erroneously granted summary judgment in favor of Chief Locke on the substantive due process claim, the jury's verdict in favor of Chief Locke on the state law claim indicates the jury would not have found in favor of Mary Lou on her substantive due process claim. Mary Lou cannot demonstrate she was prejudiced by the district court's grant of summary judgment, and any error in granting summary judgment in favor of Chief Locke was harmless. See Tennison v. Circus Circus Enters., Inc., 244 F.3d 684, 691 (9th Cir. 2001) ("Plaintiffs fail to articulate how they were prejudiced by this [summary judgment] ruling. Their intentional infliction of emotion[al] distress claims are predicated on the same facts and similar legal inquiries as their sexual harassment claims. Considering that the jury found against Plaintiffs on their sexual harassment claims, it is highly unlikely the jury would have found in favor of Plaintiffs on their intentional tort claims. As such, any error committed by the trial judge was harmless."); Fite v. Digital Equip. Corp., 232 F.3d 3, 6 (1st Cir. 2000) ("We see no reason to reenter this morass, since it is perfectly clear that, even if [plaintiff's] state discrimination claims should not have been dismissed on partial summary judgment, any such mistake was harmless, given the jury's verdict in [defendant's] favor on the federal discrimination claims addressed to the very same discharge."). We affirm the district court's partial summary judgment.

-14-

## C.    Municipal Liability

Finally, the Cavataios challenge the district court's grant of summary judgment in favor of the City on the Cavataios' municipal liability claims pursuant to <u>Monell v. Dept. of Soc. Servs.</u>, 436 U.S. 658 (1978).  Having affirmed the district court's grant of summary judgment in favor of Chief Locke on the Cavataios' constitutional claims, we also affirm the district court's grant of summary judgment in favor of the City on the municipal liability claims.  <u>See</u> <u>Sanders v. City of Minneapolis</u>, 474 F.3d 523, 527 (8th Cir. 2007) (citing <u>City of Los Angeles v. Heller</u>, 475 U.S. 796, 799 (1986) (per curiam); <u>Walker v. Bonenberger</u>, 438 F.3d 884, 890 (8th Cir. 2006)) ("Without a constitutional violation by the individual officers, there can be no [42 U.S.C.] § 1983 or <u>Monell</u> failure to train municipal liability.").

## III.  CONCLUSION

For the reasons stated in this opinion, the judgment of the district court is affirmed.

_____