# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-2485

_____

Lisa Mae Copeland; Jason Carl Hayes,   *
           *
    Plaintiffs,      *
           *
Norman August Steibel, Sr.,    *
           *  Appeal from the United
    Plaintiff - Appellant,   *  States District Court for the
           *  Eastern District of Missouri.
    v.         *
           *
Edward Locke, Jr.; City of Byrnes Mill;   *
City of Bella Villa,      *
           *
    Defendants - Appellees.   *

_____

Submitted: June 17, 2010
Filed: July 30, 2010

_____

Before MURPHY, BEAM and BENTON, Circuit Judges.

_____

BEAM, Circuit Judge.

Norman Steibel appeals the district court's grant of summary judgment in favor of the defendants on his claim for relief under 42 U.S.C. § 1983 alleging that Chief Edward Locke used excessive force to effectuate his unlawful arrest and that the City of Bella Villa was deliberately indifferent to his constitutional rights.[1] Under the facts

_____

[1]The other plaintiffs listed in the caption are not before us on appeal.

viewed in a light most favorable to Steibel, Chief Locke is not entitled to judgment as a matter of law on some of Steibel's claims. Therefore, we reverse in part and affirm in part.

## I.    BACKGROUND

Steibel based his claim on the following record facts including a video of the events, which we have reviewed. We view this evidence in a light most favorable to Steibel. On October 18, 2007, Chief Edward Locke of the City of Bella Villa Police Department executed a traffic stop at the corner of Bayless Road and Pardella Avenue in St. Louis County. Norman Steibel, a sixty-seven-year old business owner, operates a welding and body shop located at that very corner. The offending vehicle came to a stop alongside Steibel's business such that the police cruiser partially blocked access to and from the business's parking lot.

At approximately the same time as Chief Locke exited his police cruiser to approach the stopped vehicle, one of Steibel's patrons sought to leave the parking lot but was blocked in by the vehicles. Steibel exited his business and requested in a "nice" manner that Chief Locke move his vehicle so that the patron could exit. Chief Locke summarily rejected Steibel's request, stating that he was engaged in official police business. After repeated requests for Chief Locke to move his vehicle, Steibel approached the traffic stop where he can be seen on the video captured from the police cruiser's dashboard camera. Standing at the rear passenger side of the vehicle, and separated from Chief Locke by the width and length of the stopped vehicle,[2] Steibel pointed at Chief Locke, pointed down the road, said "move the f***ing car," and pointed at Chief Locke again.

---

[2]Chief Locke is standing at the offending driver's side window, while Steibel is standing at the rear passenger-side tire.

Chief Locke immediately reached for his handcuffs, walked around the rear of the vehicle and grabbed for Steibel's hands. Steibel, visibly agitated and not wanting to be arrested, backed up and pulled his hands away from Chief Locke. Chief Locke continued walking towards Steibel until both were out of range of the dashboard camera.

Once out of camera range, Chief Locke slammed Steibel against a parked car, threw him to the ground, kneed him in the back, yanked and twisted the handcuffs on his wrists, and applied continuing pressure to his neck and back. As a result of Chief Locke's force, Steibel suffered lacerations to both wrists for which he was treated at the emergency room and abrasions across his body caused by pieces of gravel and debris. Moreover, Steibel alleges that he suffered an injury to his knee. Today, Steibel maintains that he has continuing pain in his knee and cannot walk as well as he could before the incident.

Steibel brought this § 1983 action alleging that (1) Chief Locke lacked probable cause to arrest him; (2) Chief Locke used excessive force to arrest; and (3) the City of Bella Villa was subject to municipal liability for Chief Locke's actions. Appellees moved for summary judgment on all three claims, and the district court granted the motion in full.

## II.    DISCUSSION

"We review a district court's grant of summary judgment de novo, viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party." Cavataio v. City of Bella Villa, 570 F.3d 1015, 1019 (8th Cir. 2009) (quotation omitted). Summary judgment is appropriate only if there is no genuine issue of material fact and the defendants are entitled to judgment as a matter of law. Baribeau v. City of Minneapolis, 596 F.3d 465, 473 (8th Cir. 2010).

## A. Unlawful Arrest

The district court held that Steibel's first claim against Chief Locke failed because no reasonable jury could find that Chief Locke lacked actual probable cause to arrest Steibel for violating St. Louis County Ordinance section 701.110, which prohibits interfering with official police conduct, and Missouri Statute section 575.150, which prohibits fleeing from or interfering with an arrest. We disagree.

"Probable cause exists if 'the totality of facts based on reasonably trustworthy information would justify a prudent person in believing the individual arrested had committed . . . an offense.'" Flynn v. Brown, 395 F.3d 842, 844 (8th Cir. 2005) (alteration in original) (quoting Hannah v. City of Overland, 795 F.2d 1385, 1389 (8th Cir. 1986)). A review of the video taken from Chief Locke's police cruiser illustrates that Steibel's repeated requests for Chief Locke to move his vehicle distracted Chief Locke while conducting the traffic stop. Moreover, the video depicts an agitated Steibel who points at Chief Locke, points down the road, and by Steibel's own admission, tells Chief Locke to "move the f***ing car." However, even at the height of his agitation, Steibel was separated from Chief Locke by the length and width of the stopped vehicle. And, while Steibel did approach the traffic stop, the video shows Steibel approaching in a non-aggressive manner. Accordingly, when viewed in a light most favorable to Steibel, at most, Steibel distracted, cursed at, and pointed at Chief Locke.

Steibel's conduct, viewed in this light, does not violate Missouri Statute section 575.150 which requires "(1) the defendant, having knowledge that a law enforcement officer is making an arrest or a stop of a person or vehicle, (2) resists or interferes with the arrest by threatening to use violence or physical force or by fleeing from the officer, . . . and (3) defendant did so with the purpose of preventing the officer from completing the arrest." State v. Clark, 263 S.W.3d 666, 673 (Mo. App. 2008), overruled in part on other grounds, State v. Daws, 311 S.W.3d 806 (Mo. 2010). Here,

-4-

Steibel knew that Chief Locke was making a traffic stop, but the record, viewed in a light most favorable to Steibel, indicates that Steibel did not threaten the use of violence or physical force nor did he "flee" from the officer under any reasonable definition of the word as he backed away from the scene upon being engaged and pursued by Chief Locke. Moreover, according to the record, Steibel had no intention of preventing the officer from completing the stop. Thus, under the facts viewed in a light most favorable to Steibel, no reasonable officer could have believed that Steibel had violated section 575.150.

Moreover, Steibel's conduct, viewed in this light, did not constitute an arrestable violation of the county ordinance. Under the ordinance "it is unlawful for any person to interfere in any manner with a police officer or other employee of the County in the performance of his official duties or to obstruct him in any manner whatsoever while performing any duty." St. Louis County, Mo., Rev. Ordinances tit. VII, ch. 701, § 701.110. As we have noted, the evidence indicates that Steibel's conduct distracted Chief Locke while he was conducting the traffic stop. We doubt, however, whether merely requesting that an officer move his vehicle, which momentarily distracts the officer from conducting a routine traffic stop, constitutes interference under the ordinance. But, even assuming that a Bella Villa police officer is an officer or employee of St. Louis County, which we doubt, and that such a distraction does constitute interference under the ordinance, such expressive conduct cannot constitute an arrestable offense. That is, "[i]t is . . . fundamental that a lawful arrest may not ensue where the arrestee is merely exercising his First Amendment rights." Gainor v. Rogers, 973 F.2d 1379, 1387 (8th Cir. 1992); see also City of Houston v. Hill, 482 U.S. 451, 462-63 (1987) ("The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state."). If, as Steibel avers, Chief Locke arrested Steibel solely for distracting him from the stop through the use of his protected expression, then the arrest was unlawful even if it arguably interfered with police activity.

Notably, Chief Locke asserts that he advised Steibel to step back. Steibel denies this. Accordingly, viewing the record in a light most favorable to Steibel, Chief Locke merely reacted to Steibel's use of loud, profane language coupled with Steibel's expressive gestures in directing the Chief to move his cruiser away from Steibel's business. No reasonable police officer could believe that he had actual probable cause to arrest a citizen for such protected activity. Accordingly, on this summary judgment record, Steibel has presented sufficient evidence to show that Chief Locke arrested him without actual probable cause.

The appellees assert that even if Chief Locke lacked actual probable cause he is entitled to qualified immunity because he had arguable probable cause. "In the wrongful arrest context, officers are entitled to qualified immunity if they arrest a suspect under the mistaken belief that they have probable cause to do so, provided that the mistake is objectively reasonable." Baribeau, 596 F.3d at 478 (internal quotation omitted). Thus, "the governing standard for a Fourth Amendment unlawful arrest claim is not probable cause in fact but arguable probable cause . . . that is, whether the officer should have known that the arrest violated plaintiff's clearly established right." Walker v. City of Pine Bluff, 414 F.3d 989, 992 (8th Cir. 2005) (alteration in original) (internal quotation omitted). Here, the district court found that since no reasonable juror could find that Chief Locke lacked probable cause in fact, he was entitled to qualified immunity. But crediting Steibel's testimony, as we must on summary judgment, see id. at 993, it reveals that Steibel never once physically interfered with, threatened to physically interfere with, or threatened to use any violence against Chief Locke. Instead, all Steibel did was ask that the officer move his vehicle, raise his voice, curse at the officer and point. No reasonable police officer could believe that he had arguable probable cause to arrest an individual for such protected expressive conduct. Accordingly, on this summary judgment record, Chief Locke is not, as a matter of law, entitled to qualified immunity.

We therefore hold that the district court erred in dismissing Steibel's unlawful arrest claims on summary judgment.

## B.    Excessive Force

In dismissing Steibel's excessive force claim, the court found that "Steibel ha[d] failed to meet his burden of proving that an issue of material facts [sic] exists as to whether the amount of force used was objectively unreasonable under the circumstances." Steibel v. Locke, No. 4:07CV2089SNLJ, 2009 WL 1456705, at *12 (E.D. Mo. May 22, 2009). We disagree.

"The right to be free from excessive force is a clearly established right under the Fourth Amendment's prohibition against unreasonable seizures of the person." Cook v. City of Bella Villa, 582 F.3d 840, 849 (8th Cir. 2009) (quotation omitted). Whether an officer's use of force is "excessive" is a question of whether the force used was "objectively reasonable under the particular circumstances." Id. (quotation omitted). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests at stake." Graham v. Connor, 490 u.s. 386, 396 (1989) (internal quotation omitted). Accordingly, we "evaluate the totality of the circumstances, including the severity of the crime, the danger the suspect poses to the officer or others, and whether the suspect is actively resisting arrest or attempting to flee." Cook, 582 F.3d at 849.

The record, viewed in a light most favorable to Steibel, indicates that Chief Locke approached Steibel and grabbed for Steibel's hands. Steibel backed away from Chief Locke. Chief Locke pursued Steibel until both were out of the range of Chief Locke's dashboard camera. Once out of camera range, Steibel asserts that Chief Locke slammed the sixty-seven-year old Steibel against a parked vehicle, threw him

to the ground, handcuffed him, kneed him in the back, and clamped down on the handcuffs. As a result of this application of force, Steibel went to the hospital where he was treated for cuts and abrasions across his body, most notably cuts to his wrists from the application of the handcuffs. Moreover, Steibel avers that he has suffered injury to his knee causing him difficulty in walking.

While "[i]t remains an open question in this circuit whether an excessive force claim requires some minimum level of injury," id. at 850 (quotation omitted), Steibel presented evidence of injuries which are, as a matter of law, more than *de minimis*. Notably, in Wertish v. Krueger, we found that "relatively minor scrapes and bruises" coupled with a "less-than-permanent aggravation of a prior shoulder condition were *de minimis* injuries" that did not support a finding of excessive force. 433 F.3d 1062, 1067 (8th Cir. 2006); see also Foster v. Metro. Airports Comm'n, 914 F.2d 1076, 1082 (8th Cir. 1990) (noting "allegations of pain as a result of being handcuffed, without some evidence of more permanent injury, are [not] sufficient to support [a] claim of excessive force"). Steibel alleges injuries which are more than simple cuts and bruises, however. Indeed, the record indicates that Steibel suffered more than mere pain, he suffered lacerations from the handcuffs. Additionally, Steibel alleged chronic injury to his knee as a result of the incident. Such injuries are not *de minimis* as a matter of law. Accordingly, Steibel has presented sufficient evidence to create a genuine issue of fact as to whether the force used to effectuate his unlawful arrest was excessive.

Appellees contend that any injuries to Steibel were the result of degenerative, preexisting medical conditions, and not the result of Locke's use of force. As we noted in Cavataio, when an officer exerts objectively reasonable force which results in the aggravation of a pre-existing injury unknown to the officer, such an injury is not sufficient to indicate excessive force. 570 F.3d at 1020. In this case, however, the evidence is unclear as to whether the injuries that Steibel alleges were the result of his pre-existing conditions. Although the appellees presented expert testimony tending

-8-

to show that Steibel's injuries were a direct result of his pre-existing condition, such testimony is for the jury to weigh, and not the judge on summary judgment. Thus, there is a material question of fact regarding whether Steibel's injuries are the result of excessive force, and the court erred in resolving that factual dispute against Steibel. We therefore reverse the dismissal of Steibel's excessive force claim on summary judgment.

## C.    Municipal Liability

The district court rejected Steibel's claims for municipal liability because no reasonable juror could find that (1) Chief Locke was the "final policy-maker," (2) the City delegated final authority to Locke; or (3) the City had failed to respond appropriately to any alleged "pattern of transgressions" regarding excessive use of force by Chief Locke. We agree.

Under Monell, the City of Bella Villa may be held liable under § 1983 for Chief Locke's actions if one of its customs or policies caused the violation of Steibel's rights. Monell v. Dep't of Soc. Servs. of New York, 436 U.S. 658, 690 (1978). Although "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, an unconstitutional government policy [can] be inferred from a single decision taken by the highest officials responsible for setting policy in that area of the government's business." Davison v. City of Minneapolis, 490 F.3d 648, 689 (8th Cir. 2007) (quotations omitted) (first alteration in original). "In this scenario, '[m]unicipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered.'" Id. (alteration in original) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986)). Here, Steibel avers that Chief Locke, as the chief of police, is the final policymaking authority for the City of Bella Villa police department. We disagree.

"[W]hether an official had final policymaking authority is a question of state law." Pembaur, 475 U.S. at 483. Under Missouri state law, the mayor and the board of aldermen of a city such as Bella Villa are the final policy makers for the "good government of the city [and] the preservation of peace and good order." Mo. Rev. Stat. § 79.110. Thus, as a matter of Missouri law, Chief Locke is not the final policy maker and Steibel's first claim fails as a matter of law.

Steibel next avers that Chief Locke admitted to possessing discretionary policy-making authority for the Bella Villa Police Department. But, "[t]he fact that a particular official–even a policymaking official–has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." Pembaur, 475 U.S. at 481-82. Though Locke has some authority in carrying out certain administrative duties and directing officers to take certain actions, his decision of when to use force to effectuate an arrest is not, as a matter of law, one over which he has any policymaking authority. And, the record is devoid of any evidence showing that the board of aldermen delegated such authority to Locke. Accordingly, Steibel's second theory for municipal liability fails as well.

Steibel's third theory is that the board of aldermen were aware of, and deliberately indifferent to, a "pattern of transgressions" regarding excessive force by Chief Locke. To succeed on this theory Steibel "must demonstrate that [the city's] decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." Bd. of the County Comm'rs v. Brown, 520 U.S. 397, 411 (1997). Steibel contends that the board of aldermen had received numerous complaints about Chief Locke–including several § 1983 actions filed against Chief Locke for the use of excessive force–thereby putting them on notice that their policies were inadequate, and that the board did not act on those complaints.

The uncontroverted facts demonstrate, however, that the board independently reviewed each complaint they received and exonerated Chief Locke from any allegations of use of excessive force. And, up until now, all of the cases brought against Chief Locke have been found meritless by courts in this circuit. Moreover, members of the board also rode along with Chief Locke on numerous occasions to ensure he was adequately protecting the citizens of Bella Villa. Accordingly, Steibel failed to present sufficient evidence to create a triable issue of fact as to whether the municipality was deliberately indifferent to the risk that police officers, like Chief Locke, would use excessive force to effectuate an unlawful arrest of citizens. Therefore, the district court's decision to dismiss Steibel's municipal liability claims is affirmed.

## III.  CONCLUSION

We affirm the district court's dismissal of Steibel's municipal liability claims against the City of Bella Villa but reverse on the remaining claims and remand for proceedings consistent with this opinion.

———————————————————