GRUENDER, Circuit Judge,
concurring in part and dissenting in part.
I concur in the court’s opinion insofar as it affirms the denial of qualified immunity to Officers Santiago and Roth for their act of jerking Blazek from the floor and dismisses the appeal of Blazek’s state-law claims. However, I respectfully dissent from the court’s decision to grant qualified immunity to the officers for their use of force to handcuff Blazek, which a reasonable jury could conclude caused a separated shoulder, a torn rotator cuff, and a fractured ankle.
Officers Santiago and Roth are entitled to qualified immunity for the force that they used to handcuff Blazek unless (1) the evidence, construed in the light most favorable to Blazek, establishes a violation of a constitutional or statutory right and (2) the right was clearly established at the time of the violation. See Edwards v. Byrd, 750 F.3d 728, 731-32 (8th Cir.2014). The court rests its partial grant of qualified immunity on its conclusion that the constitutional right implicated by Blazek’s handcuffing was not clearly established at the time of the incident. Ante at 923-25. I respectfully disagree. Because I believe that a reasonable jury could find that the officers violated the Fourth Amendment when handcuffing Blazek and because this constitutional right was clearly established, I would affirm the denial of qualified im *927 munity for the officers’ use of force in its entirety.
The Fourth Amendment permits an officer to use “some degree of physical coercion or threat thereof’ to effect an arrest or investigatory stop. Graham v. Connor, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Applying this directive in the context of handcuffing, this court has recognized that “[h]andcuffing inevitably involves some use of force, and it almost inevitably will result in some irritation, minor injury, or discomfort where the handcuffs are applied.” Chambers v. Pennycook, 641 F.3d 898, 907 (8th Cir.2011) (internal citation and quotation marks omitted). Even so, an officer who uses an objectively unreasonable amount of force to handcuff a suspect violates the Fourth Amendment. See Guite v. Wright, 147 F.3d 747, 750 (8th Cir.1998). Whether force is objectively reasonable depends on the totality of the circumstances, including the threat that the suspect poses to the officers or others, the severity of the crime at issue, and whether the suspect is actively resisting arrest or attempting to flee. Graham, 490 U.S. at 396, 109 S.Ct. 1865. We also may consider the degree of any resulting injury, Mann v. Yarnell, 497 F.3d 822, 826 (8th Cir.2007), because the severity of a suspect’s injury is indicative of the amount and type of force used, Chambers, 641 F.3d at 906.
A reasonable jury could conclude that the force employed by Officers Santiago and Roth to handcuff Blazek was objectively unreasonable. Beginning with the circumstances confronted by the officers, for purposes of summary judgment, Officer Santiago had no basis to suspect that Blazek had committed a crime. To be sure, Officer Santiago testified about his suspicion that someone in the apartment had flushed drugs down the toilet, but Blazek specifically disputes the facts underlying this suspicion. Blazek, who was the only person in the apartment, asserts that he was in the shower and did not flush the toilet or hear Officer Santiago knocking on the front door. Viewing the facts in the light most favorable to Blazek, it cannot be said that Officer Santiago saw an individual look through the peephole of the front door, heard that individual run away from the door, and promptly heard a toilet flush. See Stoner v. Watlingten, 735 F.3d 799, 803 (8th Cir.2013). While a jury could credit Officer Santiago’s narrative, for purposes of summary judgment, we must assume that Officer Santiago had no basis to suspect Blazek of any wrongdoing. See id.
Nor was there a meaningful basis to suspect that Blazek posed a danger to the officers. Blazek was clad in a bath towel throughout the encounter with the officers, essentially eliminating any likelihood that he was carrying a weapon. Blazek, it must be noted, was not fully responsive to questions about his identity or compliant with Officer Santiago’s orders to remain seated. The court classifies Blazek’s lack of cooperation as passive resistance, ante at 923, a conclusion that finds support in our case law. See Wertish v. Krueger, 433 F.3d 1062, 1066-67 (8th Cir.2006). However, any additional force that reasonably may be used to respond to passive resistance depends on the nature of that resistance as well as the circumstances confronting the officer. See id.; cf. Rohrbough v. Hall, 586 F.3d 582, 586 (8th Cir.2009) (finding that reasonable jury could conclude that arrestee’s act of pushing officer “may have been de minimis or inconsequential”). For example, Blazek’s refusal to identify himself and failure to remain seated are less consequential than the passive resistance present in Wertish, where the plaintiff, after leading officers on a low-speed chase for several miles, disobeyed officers’ orders to exit his vehicle, position his hands for handcuffing, *928 and stand up. See Wertish, 433 F.3d at 1065, 1067.
Turning to the use of force alleged here, Blazek claims that the officers handcuffed him immediately after he remarked “maybe I should be talking to a lawyer.” He made this statement in response to Officer Santiago, who had repeatedly yelled accusations that Blazek had flushed drugs down the toilet. Blazek avers that the officers then did the following: “Officer Santiago grabbed my right arm, twisted it upward and behind my back and then threw me to the floor. Officer Roth then jumped on me and handcuffed me while both officers were holding me down.” Bla-zek also alleges that “[ajfter applying the handcuffs, Officers Santiago and Roth grabbed me by my arms and jerked me from the floor onto the mattress of my bed.” Relying on Blazek’s description of the handcuffing, the court reasons that Officers Santiago and Roth used essentially the same maneuver as the handcuffing technique that our court in Wertish and other circuits have found to be constitutional. Ante at 923 & 924 n. 2. But the words used by Blazek to describe the force used to handcuff him are only part of the story. Unlike the plaintiff in Wertish, who only suffered de minimis injuries, 433 F.3d at 1067, an emergency-room doctor diagnosed Blazek with a separated shoulder and a fractured ankle. Moreover, Bla-zek later underwent surgery to repair a torn rotator cuff. Consistent with the rule that “[t]he degree of injury is certainly relevant insofar as it tends to show the amount and type of force used,” Chambers, 641 F.3d at 906, the severity of Blazek’s injuries is indicative of a significant degree of force.
It is unclear from the record whether grabbing and twisting Blazek’s arm, throwing him to the floor, jumping on'him, holding him down, jerking him from the floor, or some combination thereof caused Blazek’s injuries. This uncertainty is magnified by the reality that these applications of force occurred as part of an unbroken sequence of events that unfolded over a very short period of time. As such, it is entirely possible that some or all of Bla-zek’s injuries resulted from applications of force other than the officers’ act of jerking Blazek from the floor. Indeed, it is difficult to surmise how jerking Blazek by his arms from the ground to his bed could have fractured his ankle. Considering the totality of the circumstances — including Officer Santiago’s lack of suspicion that Blazek had committed a crime, the fact that Blazek was wearing a bath towel, the degree of Blazek’s passive resistance, and the extent of his injuries — a reasonable jury could conclude that the officers’ applications of force during the entire sequence of events — grabbing, twisting, throwing, jumping on, holding, and jerking — violated the Fourth Amendment.
This conclusion is wholly consistent with precedent. In Copeland v. Locke, 613 F.3d 875 (8th Cir.2010), an opinion that postdates the incident here, we found that a reasonable jury could find a Fourth Amendment violation where an arrestee alleged that an officer “slammed [him] against a parked vehicle, threw him to the ground, handcuffed him, kneed him in the back, and clamped down on the handcuffs.” Id. at 881. These applications of force left the arrestee with a chronic knee injury, abrasions across his body, and lacerations on his wrists. Id. The arrestee, like Bla-zek, engaged in some degree of passive resistance: when the officer attempted to handcuff the arrestee, he “backed away,” requiring the officer to pursue him. Id. Similarly, in Kukla v. Hulm, 310 F.3d 1046 (8th Cir.2002), we affirmed the denial of qualified immunity where an arrestee suffered injuries to his collar bone, shoulder, neck, and wrist. Id. at 1050. The arres- *929 tee in Kukla alleged that an officer “forced him against his truck, twisted his arm, and raised it high behind his back.” Id. The arrestee also suffered a broken wrist from the tightness of the handcuffs, which the officer failed to loosen for fifteen minutes. Id. The arrestee did not actively resist the officer’s attempt to handcuff him, but the arrestee refused to sign a ticket and “protested” when the officer announced that he was under arrest. Id. at 1048, 1050. In light of the similarities between Blazek’s account of being handcuffed and those alleged in Copeland and Kukla, the first step of the qualified-immunity analysis involves nothing more than a straightforward application of precedent.
This brings me to the legal issue on which the court and I disagree: whether the constitutional right implicated by Bla-zek’s handcuffing was clearly established at the time of the incident. This determination requires discerning whether “[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.” Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). A plaintiff need not show that “the very action in question has previously been held unlawful,” id., but he must establish that the unlawfulness was apparent in light of preexisting law, id. This circuit applies a “flexible standard” in conducting this inquiry, “requiring some, but not precise factual correspondence with precedent, and demanding that officials apply general, well-developed legal principles.” Stoner, 735 F.3d at 803 (quoting J.H.H. v. O’Hara, 878 F.2d 240, 243 (8th Cir.1989)).
Judged by this standard, Officers Santiago and Roth violated a clearly established constitutional right. Kukla, a then-existing precedent in this circuit, and the analogous decisions of our sister circuits demonstrate as much. By distinguishing Kukla on its facts, ante at 923-24, the court mandates too much factual correspondence between past cases and the present scenario. Kukla is far more analogous to this case than the court allows. The arrestee in Kukla alleged that the officer “forced him against his truck, twisted his arm, and raised it high behind his back.” 310 F.3d at 1050. Blazek describes his experience using similar language, alleging that Officer Santiago “grabbed” his right arm and “twisted” it upward and behind his back. Blazek’s handcuffing also involved additional applications of force beyond those present in Kukla, including Officer Santiago “throwing]” Blazek to the floor as well as Officer Roth “jumping]” on Blazek to apply the handcuffs while both officers held Blazek down. The arrestee in Kukla suffered injuries to his collar bone, shoulder, neck, and wrist, id.; Blazek, similarly, suffered a separated shoulder, a tom rota-tor cuff, and a fractured ankle.
The court distinguishes Kukla in two ways. First, the court finds significant that the arrestee in Kukla suffered a broken wrist due to the tightness of the handcuffs, whereas Blazek did not allege a similar injury. Ante at 923-24. The court, in effect, makes Kukla all about tight handcuffs. The Kukla court, however, did not limit its denial of qualified immunity in the manner implied by the court. Kukla denied qualified immunity for all of the officer’s conduct in handcuffing the arrestee, including the officer’s actions prior to tightening the handcuffs. 310 F.3d at 1050. The court’s second basis for distinguishing Kukla is the perceived absence of resistance by the arrestee. Ante at 923-24. It is true that the Kukla court noted “the lack of active resistance to arrest” by the arrestee, 310 F.3d at 1050, but the arrestee did refuse to sign a ticket and “protested” the officer’s announcement that he was under arrest, id. at 1048 — acts that would fit within the definition of pas *930 sive resistance adopted by the court, ante at 923. Moreover, to the extent that this passive resistance differs from Blazek’s refusal to provide his name and stay seated, such a difference favors Blazek because the arrestee in Kukla actually “protested” the officer’s decision to handcuff him, 310 F.3d at 1048, whereas Blazek alleges that he did not protest being handcuffed. Accordingly, after Kukla, a reasonable officer would understand that the degree of force applied by Officers Santiago and Roth to handcuff Blazek is constitutionally excessive.
The court contends that such a rule turns on “fine distinctions” that are imperceptible to an officer who is acting in real time. Ante at 924-25. This assessment flows from the court’s characterization of Blazek’s handcuffing as “a relatively common and ordinarily accepted non-excessive way to detain an arrestee.” Ante at 923, 925 (quotation omitted). A handcuffing technique that causes a separated shoulder, a torn rotator cuff, and a fractured ankle cannot be labeled as “common.” Applying this technique in a way that causes a de minimis injury is, for purposes of summary judgment, clearly distinct from applying it so as to cause the serious injuries alleged here.[4] Compare Wertish, 433 F.3d at 1066-67, with Kukla, 310 F.3d at 1050. This is not to say that a reasonable officer must contemplate the injury that his force may cause before handcuffing a suspect. Rather, the degree of injury that
an arrestee sustains informs our assessment of how much force is at issue. See Chambers, 641 F.3d at 906 (“The degree of injury is certainly relevant insofar as it tends to show the amount and type of force used.”).
That the constitutional right at issue was clearly established is further supported by the then-existing views of our sister circuits. The First, Second, and Sixth Circuits have reached similar conclusions to that in Kukla, and the First Circuit even cited Kukla in doing so. Morelli v. Webster, 552 F.3d 12, 16, 21, 23-25 (1st Cir.2009) (citing Kukla and denying qualified immunity where officer subdued and detained plaintiff by “grabbing her wrist, yanking her around, slamming her against the hallway wall, [and] pinning her there by her forearms [for several minutes],” which caused contusions, a separated shoulder, and a torn rotator cuff; noting that “plaintiffs attempt to walk past [the officer] might have given [him] the right to use a modicum of force to effectuate a stop”); Robison v. Via, 821 F.2d 913, 916, 923-24 (2d Cir.1987) (concluding that reasonable jury could find that officer used excessive force to subdue and detain plaintiff where, after plaintiff disobeyed officer’s order, officer “pushed” plaintiff against car door, “yanked” her out of the car, “threw” her up against the fender, and “twisted” her arm behind her back, which caused bruising that lasted several weeks);[5] Minchella v. Bauman, 72 Fed.Appx. 405, 407-10 (6th Cir.2003) (finding *931 genuine dispute of fact where, after plaintiff refused to comply with officer’s order and “began to turn away from the Officers,” officers “twisted [plaintiffs] arms, slammed her into [a] police car, and [ ] one of the Officers kicked her in the ankle”; noting that plaintiff sprained her wrist).[6]
Notwithstanding Kukla and other analogous decisions, the court artificially separates an unbroken sequence of events that involved multiple applications of force— grabbing, twisting, throwing, jumping on, holding, and jerking — to grant qualified immunity for all but one of these uses of force. The court takes this step even though we cannot determine which use (or uses) of force caused Blazek to suffer a separated shoulder, a torn rotator cuff, and a fractured ankle. The court justifies its unusual bifurcation of this incident by concluding that of the applications of force at issue here, a reasonable officer would have understood that only one of them— the jerking — violates the Constitution. Because precedent clearly establishes that a reasonable officer would not draw this distinction, I respectfully dissent.[7]

. The court downplays the degree of Blazek’s injuries by reasoning that they may be the "unpredictable and fortuitous consequence[ ] of an officer's use of force.” Ante at 923 (quotation omitted). The court also posits that "an awkward landing” or the unfortunate positioning of Blazek’s foot may have caused his injuries. Ante at 924-25. The court's focus on these other potential causes of Blazek's injuries overlooks, at a procedural juncture in which Blazek receives the benefit of all reasonable inferences, the very real possibility that the officers’ applications of force to handcuff Blazek, and not some other intervening factor, caused Blazek’s injuries. See Copeland v. Locke, 613 F.3d 875, 882 (8th Cir.2010) (finding genuine dispute about whether injuries resulted because of peculiarities of plaintiff or from use of force).

. Although Robison was decided under the Fourteenth Amendment, 821 F.2d at 924-25, its rule has been applied in the Fourth Amendment context, Amnesty Am. v. Town of *931 W. Hartford, 361 F.3d 113, 123-24 (2d Cir.2004) (Sotomayor, J.).

. The court cites several cases from other circuits that it reads as supportive of its view. Ante at 923 & 924 n. 2. Absent from every case cited by the court, save two, is a plaintiff who suffered any injury. The two exceptions, moreover, are readily distinguishable. Rodriguez v. Farrell, 280 F.3d 1341, 1352-53 (11th Cir.2002) (finding that officer’s use of force caused injury to plaintiff because of particularities of plaintiff of which officer was not aware); Goodrich v. Everett, 193 Fed.Appx. 551, 553, 556-57 (6th Cir.2006) (finding officer’s use of force to be objectively reasonable where reasonable officer would have suspected plaintiff of recently committing violent assault and would have suspected that plaintiff, after refusing to stop his car for two miles even though he was being chased by multiple police cars, was attempting to flee).

. Bifurcating an incident in which there is no clear demarcation between the applications of force or resultant injuries may create practical difficulties at trial: Will the jury be allowed to consider evidence of the force used during Blazek's handcuffing? Will the jury be required to determine which application of force caused which injury? While these difficulties likely are not insurmountable, the court's decision to grant qualified immunity for a portion of an unbroken series of events no doubt will complicate the task of the district court and the jury.