# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-2037

_____

Percy Green, II,

    Plaintiff - Appellant,

v.

Paul Nocciero, Secretary of the Board
of Police Commissioners, et al.,

    Defendants - Appellees.

\*
\*
\*
\*
\*   Appeal from the United States
\*   District Court for the
\*   Eastern District of Missouri.
\*
\*
\*
\*

_____

Submitted: January 12, 2012
Filed: April 20, 2012

_____

Before WOLLMAN, LOKEN, and MELLOY, Circuit Judges.

_____

LOKEN, Circuit Judge.

Percy Green II, a well-known civil rights activist, was arrested when he refused to leave a public meeting of the St. Louis School Board. Green was charged with disturbing the peace and resisting arrest, the case was eventually tried, and he was acquitted. He then filed a thirteen-count complaint against more than twenty defendants alleging his arrest and prosecution were part of a wide-ranging conspiracy to violate his civil rights. Defendants are the Board of Police Commissioners, the Chief of Police, and the officers involved in Green's arrest; the City of St. Louis, its Mayor, and two prosecutors; and the St. Louis School Board and two security officers who initially asked Green to leave the meeting.

After extensive discovery, the three groups of defendants separately moved for summary judgment dismissing all claims. In a ninety-page Memorandum and Order, the district court[1] granted summary judgment dismissing all claims except the First Amendment and conspiracy claims against the School Board and its security officers, Charles McCrary and Kestner Miller. After further briefing and fact submissions, the court granted these defendants' motion for summary judgment on the remaining claims. Green appeals the dismissal of his 42 U.S.C. §§ 1983 and 1985 individual and conspiracy claims alleging violations of his Fourth and First Amendment rights. Reviewing the grant of summary judgment *de novo*, Firemen's Fund Ins. Co. v. Thien, 8 F.3d 1307, 1310 (8th Cir. 1993), we affirm.

## I. Background

We view the facts in the light most favorable to the non-moving party, Green. On November 18, 2003, he joined nearly 500 people in attending the School Board's public meeting in a large school auditorium. A new Board majority had been elected that spring, appointed a controversial new Superintendent, and made decisions unpopular with many parents and teachers. As a result, Board meetings prior to the November 18 meeting had been turbulent and frequently disrupted. Preparing for more of the same, the Board ordered McCrary, Director of Security for the St. Louis Public Schools, to provide additional school security personnel and a contingent of St. Louis police officers at the November 18 meeting. Thus, when the meeting began, several uniformed officers were stationed in the back of the auditorium or in the lobby just outside.

The November 18 meeting was contentious, with a great deal of yelling and disruptive behavior by persons scattered throughout the audience. The presiding

---

[1]The Honorable Rodney W. Sippel, United States District Judge for the Eastern District of Missouri.

officer, Board president Darnetta Clinkscale, repeatedly asked the audience to quiet down and not disrupt the meeting, but oral outbursts continued. Green spoke during the public comment portion of the meeting. As at prior meetings, he criticized the actions of the Board majority. Disruptions continued during the report of the Superintendent that followed. Whether Green was one of those in the audience who made loud, disruptive outbursts is hotly disputed. Security officers McCrary and Miller testified that he did and that they asked him to be quiet. Green denied being asked to be quiet. He testified that he sat quietly after the public comment session, made no outbursts, and was never disruptive. Three audience members sitting near Green submitted affidavits agreeing that he was not loud or disruptive prior to his arrest -- public school teachers William and Mary Beth Purdy and teachers union vice president Byron Clemens.

The events central to this appeal were described in Green's statement of "Uncontroverted Material Facts" as follows:

> After Percy Green returned to his seat . . . he was quiet attentive and made no sounds, when School Board Member Darnetta Clinkscale[] made a silent signal to Security Officer Charles McCrary, which signal was seen by Mr. and Mrs. Purdy and Byron Clemens, McCrary in trun [sic] signaled to Security Officer Kestner Miller who approached the quiet Mr. Percy Green, who saw the signals of McCrary and Miller. Miller told Green "You must leave" to which Green replied "I'm a taxpayer" and "why", to which Mr. Miller gave no explanation but signaled to McCrary and McCrary in turn made a "come forward" signal to the back of the room. Immediately two police officers approached Mr. Green, telling Green that he had to leave to which Mr. Green again[] asked "why" and again stated he was a taxpayer, but was never given a reason. Immediately the officer who spoke to him with another officer yanked Green from his seat onto the floor[.] Green in no manner resisted, his hands were limp as he was turned onto his stomach and handcuffed after which he was dragged on the floor at least thirty feet or more out of the auditorium. . . . There were many people who were

-3-

disruptive at this Nov. 18, 2003 meeting and none of them were arrested, but Green who was not disruptive, contentious or out of order in any manner was the ONLY person arrested.

The parties dispute whether McCrary also asked Green to leave. It is undisputed that Miller told or signaled to McCrary that Green would not leave before McCrary summoned the police officers. McCrary told the police officers Green was disruptive and asked them for assistance in getting Green to leave the meeting.

## II. Claims Against the Police Officers & Police Board

Green's Fourth Amended Complaint alleged that police officers violated his Fourth Amendment rights when they arrested him without probable cause.[2] The district court granted the officers summary judgment on the ground of qualified immunity, concluding that they reasonably relied on what the School Board's head of security told them, and that Green's "refusal to leave a building after an authorized agent requests him to leave" gave the officers arguable probable cause to arrest him for trespass in violation of § 569.140 of the Missouri Revised Statutes as construed in State v. Armstrong, 863 S.W.2d 374, 377 (Mo. App. 1993).

On appeal, Green argues that summary judgment was improper because there was evidence the police did not simply rely on what security officer McCrary told them. In support, Green cites a police report that, in places, can be read as a first person account of the events as they unfolded. Therefore, he argues, a reasonable jury could find there was no probable cause for his arrest because the officers had personal knowledge he was not loud and disruptive. We disagree. The report's summary of the events was consistent with the testimony and affidavits of McCrary and Miller -- that they twice asked Green to refrain from loud outbursts, he continued

---

[2]Green also alleged the officers used excessive force. The district court ruled no excessive force was used. Green's briefs on appeal do not challenge that ruling.

to disrupt the meeting with boisterous comments, Green was asked to leave the meeting and refused, McCrary summoned the officers and told them Green refused to leave, and Green was then arrested when he refused the officers' request to leave. Read as a whole and in context with the other evidence, the report is not probative evidence refuting the officers' testimony that they had no knowledge of Green's behavior prior to being summoned by McCrary, and that they relied on what McCrary told them in asking Green to leave and in arresting him when he refused. Neither Green's testimony nor his three supporting affidavits disputed this testimony.

Green does not challenge the district court's analysis of relevant Fourth Amendment principles. We agree they were sound. "Probable cause exists if the totality of facts based on reasonably trustworthy information would justify a prudent person in believing the individual arrested had committed an offense at the time of the arrest." Brodnicki v. City of Omaha, 75 F.3d 1261, 1264 (8th Cir.) (quotation omitted), cert. denied, 519 U.S. 867 (1996). A person who is disruptive may be asked to leave a government facility and may be arrested for trespass if he refuses to leave. See State v. Guess, 804 S.W.2d 57, 58 (Mo. App. 1991); accord Eichenlaub v. Twp. of Ind., 385 F.3d 274, 281 (3d Cir. 2004); State v. Occhino, 572 N.W.2d 316, 319 (Minn. App. 1997). "Arguable probable cause in a trespassing case may be based at least in part on explanations given by internal security officers, such as the security supervisor . . . ." Borgman v. Kedley, 646 F.3d 518, 523 (8th Cir. 2011); see Gramenos v. Jewel Cos., Inc., 797 F.2d 432, 439 (7th Cir. 1986) ("a guard is not just any eyewitness"), cert. denied, 481 U.S. 1028 (1987).

On this record, we conclude the district court did not err in granting the police officers qualified immunity, a doctrine that, in shielding government officials from damages liability, "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." Hunter v. Bryant, 502 U.S. 224, 229 (1991) (quotation omitted). Construing the facts most favorably to Green, the officers may have relied on inaccurate information from McCrary, but the

mistake was objectively reasonable, particularly given the chaotic circumstances. See Orin v. Barclay, 272 F.3d 1207, 1216 (9th Cir. 2001), cert. denied, 536 U.S. 958 (2002); Paff v. Kaltenbach, 204 F.3d 425, 437 (3d Cir. 2000).

Turning to Green's § 1983 claims against the Board of Police Commissioners, we read his briefs on appeal to argue only that deposition testimony and settlement correspondence from completely unrelated litigation were sufficient evidence of "custom and usage" to prevent summary judgment. We disagree. Green's failure to present probative evidence of an unconstitutional policy or custom was fatal to his claims against the Police Board. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978); Bernini v. City of St. Paul, 665 F.3d 997, 1007-08 (8th Cir. 2012); Wedemeier v. City of Ballwin, Mo., 931 F.2d 24, 26 (8th Cir. 1991). We summarily affirm the dismissal of all other claims against the police department defendants.

## III. Claims Against the City Defendants

Green's briefs on appeal present no argument challenging the district court's dismissal of all claims against City Counselors David Miller and John Bouhasin, Mayor Francis Slay, and the City of St. Louis. These claims are therefore abandoned, and their dismissal is summarily affirmed. See Jasperson v. Purolator Courier Corp., 765 F.2d 736, 740-41 (8th Cir. 1985).

## IV. Claims Against the School Board and Its Security Officers

Although the allegedly unconstitutional arrest and prosecution were the focus of Green's case in the district court, the First Amendment claims against these defendants is the nub of his appeal. Green sued no member of the School Board in his or her individual capacity, including President Clinkscale, whose hand signal to McCrary is portrayed on appeal as an essential component of the alleged conspiracy to deprive Green of his First Amendment rights to attend the public meeting and to

-6-

oppose the Board majority's actions. Instead, only the School Board in its official capacity was named as a defendant, and nowhere in the Fourth Amended Complaint was a § 1983 First Amendment claim against the Board clearly articulated.

In its lengthy initial opinion denying security officers McCrary and Miller summary judgment on Green's First Amendment claims, the district court carefully framed this issue:

> The focal point of McCrary and Kestner Miller's First Amendment argument is what types of restriction the School Board could place on Green's speech. They spend substantial energy discussing the type of forum the School Board meeting was, the types of permissible restrictions on speech in that forum, and how those restrictions applied to Green's claim to show that they did not impermissibly restrain Green's speech at the School Board meeting.
>
> But Green's First Amendment claim is not that his speech was restricted at the School Board meeting. Instead, Green's claim is the Defendant Police Officers and School Security Officers *retaliated against him* for his past civil rights activities and his speech during the comment section of the meeting. Indeed, this is one of the few areas where his claims are relatively clear. (Emphasis in original.)

In its second opinion, the district court restated this interpretation and noted, "Green does not dispute my characterization of his First Amendment claims." The court then analyzed the claims in accordance with well-established First Amendment retaliation standards and concluded that Green "failed to identify *any* evidence that Defendant School Security Officers retaliated against him [because of] his past civil rights activities" or "his comments during the public comment portion of the Meeting." Therefore, the court concluded, Green failed to "show a causal connection between Defendant School Security Officers' retaliatory animus and Green's subsequent injury," his arrest and prosecution.

On appeal, Green again articulates only a claim of First Amendment retaliation. He notes that McCrary, a former police officer, admitted knowing Green was a "well known civil rights activist" and also knew Green had spoken out against the actions of the School Board majority at the November 18 meeting and at prior Board meetings. Therefore, he argues, a reasonable jury could find that McCrary, acting at the request of Board President Clinkscale, falsely told the police officers that Green was loud and disruptive and "asked the police to arrest Green for 'peace disturbance'" because of "Green's First Amendment activities."

This retaliation claim fails for the reasons stated by the district court. Assuming as we must that Green was not in fact disruptive, he presented no facts, only his own unsupported belief, refuting the testimony by security officers McCrary and Miller that their actions were not motivated by retaliatory animus based either on Green's history of civil rights activism or on his remarks during the public comment portion of the November 18 meeting. Indeed, as the district court emphasized, after three years of discovery, Green failed to identify what speech allegedly gave rise to the alleged retaliation. Bare allegations of retaliatory animus cannot withstand a properly supported motion for summary judgment. Moreover, neither McCrary nor Miller arrested Green. Rather, McCrary told the police officers that Green was disruptive and refused to leave, the officers then asked Green to leave, and he was arrested when he refused *their* request. We agree with the district court that this sequence fails to show a sufficient causal connection between the actions of McCrary and Miller and Green's subsequent arrest and prosecution. As in Baribeau v. City of Minneapolis, 596 F.3d 465, 481 (8th Cir. 2010), accepting Green's version of the facts and viewing the conduct of the police officers and the security officers in tandem, "there is no evidence to suggest that the decision to arrest . . . was not based on an actual but overly exaggerated belief" that Green had been disruptive.

Though we agree with the district court's analysis of Green's First Amendment retaliation claim, the summary judgment record suggests a broader First Amendment

-8-

issue that we will note but not resolve. For First Amendment purposes, the School Board meeting was what has variously been called a nonpublic or a limited public forum. The School Board could reasonably restrict public access to this forum "based on the subject matter of the speech, on the identity or status of the speaker, or on the practical need to restrict access for reasons of manageability or the lack of resources to meet total demand." Victory Through Jesus Sports v. Lee's Summit R-7 Sch. Dist., 640 F.3d 329, 334-35 (8th Cir.), cert. denied, 132 S. Ct. 592 (2011). This necessarily included the authority to remove an unruly or disruptive member of the audience "to prevent his badgering, constant interruptions, and disregard for the rules of decorum." Eichenlaub, 385 F.3d at 281; see White v. City of Norwalk, 900 F.2d 1421, 1425-26 (9th Cir. 1990). But having chosen to conduct its business in public and to hear citizen views, the Board could not deny access to the meeting and, while it could limit the subject matter of citizen comments, it could not discriminate against a speaker based on his viewpoint. See City of Madison, Joint Sch. Dist. No. 8 v. Wis. Emp't Relations Comm'n, 429 U.S. 167, 176 (1976); Galena v. Leone, 638 F.3d 186, 198-99 (3d Cir. 2011); Norse v. City of Santa Cruz, 629 F.3d 966, 975-76 (9th Cir. 2010) (en banc), cert. denied, 132 S. Ct. 112 (2011).

Green's First Amendment argument, though articulated as a retaliation claim, was that Defendants could not deny his right to be at the November 18 meeting because it was a public forum. He had a right to remain at the meeting if he did nothing wrong and could not be removed if School Board officials did not want him there "because of his likeliness to speak out again on a matter that would embarrass the board majority." The *theory* is sound, it is not entirely governed by First Amendment retaliation standards, and the genuine dispute whether Green was in fact disruptive -- with his denial supported by three other members of the audience -- seems to put the theory "in play." Moreover, the three supporting affidavits provided some evidence that presiding Board President Clinkscale signaled McCrary before he directed Miller to ask Green to leave the meeting. Absent evidence of personal animus, the question whether McCrary acted under orders from School Board

officials in asking Green to leave, or instead exercised his independent judgment as head of security in determining the best way to prevent disruption of the meeting, is material to a complete First Amendment analysis.

But this theory, however viable, was neither pleaded nor explicitly argued in the district court. Indeed, Green did not challenge the court's clear warning, in its initial decision issued long before it ruled on the claims against McCrary and Miller, that it construed Green's ambiguous pleadings as asserting only a First Amendment retaliation claim. Moreover, Green did not join as individual defendants Clinkscale, the new Superintendent, or any other policymaker. Nor did he conduct discovery that would have clarified what plans the Board made prior to the meeting to control the anticipated disruption, what actions Board members took or directed as the tumultuous meeting progressed, and whether there was any focus on Green or others in the audience opposed to the Board majority's policies. Absent such evidence,[3] the most plausible inference is that security officers McCrary and Miller were simply doing their job of maintaining security and order when they asked one member of an unruly audience to leave. If they mistakenly asked a non-disruptive person to leave, that was unfortunate, but it did not violate the First Amendment. Given this factual record, the pleadings, and the First Amendment issue actually presented, we conclude that the district court's disposition of these claims should be affirmed.

Green also argues that the district court erred in granting summary judgment dismissing his Fourth Amendment claims against McCrary and Miller. As the district court noted, a serious flaw in these claims is that the security officers were not the state actors who arrested Green. The security officers did not restrict his freedom of movement in any way. Moreover, the Fourth Amendment claims are premised on Green's unlawful arrest, and we have affirmed the district court's conclusion that the

[3]There is no affidavit or deposition testimony by Ms. Clinkscale in the voluminous summary judgment record.

arresting officers had arguable probable cause to arrest Green for refusing *their* command that he leave the meeting.

Of course, the police officers' probable cause was based upon McCrary's reliable but allegedly false information. That raises a question, far from clearly established, whether McCrary, too, is entitled to qualified immunity. For example, a state actor who submits an objectively unreasonable warrant affidavit that causes an unconstitutional arrest may not be entitled to qualified immunity from Fourth Amendment damage claims. See Malley v. Briggs, 475 U.S. 335, 344-45 & n.7 (1986). But here, both the police officers and McCrary testified that McCrary only told the police that Green was disruptive and had refused a request to leave. He left the situation in the hands of the police, and Green was not arrested and removed until he refused to obey the officers' command that he leave. Thus, even if McCrary was mistaken in believing Green was one of those causing the disruption, this was neither an objectively unreasonable way to proceed when Green refused a request to leave by the School Board's authorized agents, nor were the actions of McCrary and Miller the proximate cause of Green's subsequent arrest and prosecution. The district court did not err in dismissing these Fourth Amendment claims.

## V. The Conspiracy Claims

Our conclusion that Green failed to establish a deprivation of a constitutional right requires us to affirm the dismissal of his 42 U.S.C. §§ 1983 and 1985 conspiracy claims. See White v. McKinley, 519 F.3d 806, 814 (8th Cir. 2008) (§ 1983); Larson by Larson v. Miller, 76 F.3d 1446, 1454-55 (8th Cir. 1996) (en banc) (§ 1985).

The judgment of the district court is affirmed.

_____

-11-