# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-1933

_____

Clint Small; Derrick Pomranky; Adam Lee; Michele Heck; Jason Hopkins; Amber Gamboa; Nicholas Palmer; Jonathon Flanders; Tracy Mertz

*Plaintiffs - Appellees*

v.

James McCrystal; Todd Trobaugh; County of Woodbury

*Defendants - Appellants*

_____

Appeal from United States District Court
for the Northern District of Iowa - Sioux City

_____

Submitted: November 13, 2012
Filed: February 19, 2013

_____

Before MURPHY, BENTON, and SHEPHERD, Circuit Judges.

_____

BENTON, Circuit Judge.

On October 5, 2008, deputies of Woodbury County, Iowa, responded to a disturbance. They arrested one plaintiff at the scene; arrest warrants were issued for others within weeks. The plaintiffs sued the deputies and County under 42 U.S.C. § 1983 and Iowa law. The deputies and County moved for summary judgment, which

the district court[1] denied in part. The deputies and County appeal. Having jurisdiction of the § 1983 claims under 28 U.S.C. § 1291, this court affirms.

I.

This court states the facts most favorably to the plaintiffs, discounting the deputies' contrary evidence. *See* ***Nelson v. Corr. Med. Servs.***, 583 F.3d 522, 525 (8th Cir. 2009) (en banc). On October 4, 2008, friends of a motorcycle-accident victim held a benefit at a golf course. Late in the evening, a fight broke out. A volunteer called 911. Deputies James McCrystal and Todd Trobaugh went to the golf course to respond to a "large disturbance." They arrived around 1:30 in the morning. They found no fistfights. The 30 to 50 people there were not acting violently.

McCrystal entered the clubhouse and told the bartender to stop serving alcohol. An intoxicated Clinton Michael Small was inside. They did not exchange words. McCrystal exited the building. Small followed minutes later, walking toward his camper in the parking lot. Without warning, McCrystal ran and tackled Small from behind. Small landed on his stomach and face; his face began to bleed. McCrystal handcuffed him. Small was taken to the hospital in an ambulance. The other plaintiffs expressed displeasure, but did not physically threaten the deputies.

The County charged Small, Derrick Cleve Pomranky, Adam James Lee, Jason Eugene Hopkins, Amber Lea Gamboa, Nicholas Adam Palmer, and Jonathan Paul Flanders with disorderly conduct, unlawful assembly, and failure to disperse. Small was also charged with interference with official acts, and Michele Kay Heck and Tracy Ann Mertz were charged with assault on a peace officer. None of these plaintiffs was convicted. Prosecutors dismissed charges against some, while others were acquitted.

---

[1]The Honorable Donald E. O'Brien, United States District Judge for the Northern District of Iowa.

The plaintiffs sued the County, Trobaugh, and McCrystal under 42 U.S.C. § 1983 and Iowa law. McCrystal and the County appeal the denial of summary judgment as to claims that McCrystal unlawfully arrested and used excessive force on Small. All three defendants appeal the denial of summary judgment as to the claims that the deputies induced prosecution of the plaintiffs in violation of the First Amendment, unlawfully arrested the plaintiffs other than Small (the "Warrant Plaintiffs"), entered into a civil conspiracy to violate the First and Fourth Amendment, and violated Iowa law.

II.

Because a denial of summary judgment is not a final decision, this court ordinarily lacks jurisdiction to immediately review it. *McCaster v. Clausen*, 684 F.3d 740, 745 (8th Cir. 2012). This court may, however, immediately review a denial of qualified immunity under the collateral order doctrine. *Id.*, *citing Johnson v. Jones*, 515 U.S. 304, 311-12 (1995). Jurisdiction extends to the "purely legal" issue of whether the facts, taken most favorably to the plaintiffs, support a finding that the deputies violated their clearly established constitutional rights. *Id.* at 745-46.

This court reviews de novo a denial of summary judgment on grounds of qualified immunity. *Nelson*, 583 F.3d at 527. "Summary judgment is proper if, after viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmovant, no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law." *Rau v. Roberts*, 640 F.3d 324, 327 (8th Cir. 2011), *quoting Hayek v. City of St. Paul*, 488 F.3d 1049, 1054 (8th Cir. 2007).

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This court examines (1) whether the facts alleged or shown, construed most favorably to the plaintiffs, establish a violation of a constitutional right, and (2) whether that constitutional right was clearly established

at the time of the alleged misconduct, such that a reasonable official would have known that the acts were unlawful.  *McCaster*, 684 F.3d at 746.

A.

Small claims that McCrystal violated his Fourth Amendment rights by arresting him without probable cause.  "It is clearly established that a warrantless arrest, unsupported by probable cause, violates the Fourth Amendment."  *Baribeau v. City of Minneapolis*, 596 F.3d 465, 478 (8th Cir. 2010).  "[O]fficers are entitled to qualified immunity if they arrest a suspect under the mistaken belief that they have probable cause to do so, provided that the mistake is objectively reasonable."  *Copeland v. Locke*, 613 F.3d 875, 880 (8th Cir. 2010); *see also Walker v. City of Pine Bluff*, 414 F.3d 989, 992 (8th Cir. 2005).  "Probable cause exists if the totality of facts based on reasonably trustworthy information would justify a prudent person in believing the individual arrested had committed an offense."  *Copeland*, 613 F.3d at 879 (internal quotation marks and alterations omitted).

Small was charged with unlawful assembly.

> An unlawful assembly is three or more persons assembled together, with them or any of them acting in a violent manner, and with intent that they or any of them will commit a public offense.  A person who willingly joins in or remains a part of an unlawful assembly, knowing or having reasonable grounds to believe that it is such, commits a simple misdemeanor.

**Iowa Code § 723.2**.  Viewing the facts most favorably to Small:  Neither he nor any other person gathered at the time of his arrest was "acting in a violent manner."  Several witnesses in the resulting criminal trials testified that those gathered were dispersing, while others testified that they only verbally expressed displeasure at McCrystal's acts.  Nor did Small "join[] in or remain" a part of any group; he was

-4-

walking away when arrested. Assuming these facts, a reasonable officer would not have believed he had probable cause to arrest Small for unlawful assembly.

Small was charged with failure to disperse.

> A peace officer may order the participants in a riot or unlawful assembly or persons in the immediate vicinity of a riot or unlawful assembly to disperse. Any person within hearing distance of such command, who refuses to obey, commits a simple misdemeanor.

**§ 723.3**. Viewing the facts most favorably to Small: As discussed, there was no unlawful assembly. For the same reasons, there was no riot. *See* **§ 723.1** ("A riot is three or more persons assembled together in a violent manner, to the disturbance of others, and with any use of unlawful force or violence by them or any of them against another person, or causing property damage."). Nor was Small ordered to disperse. Several witnesses testified that McCrystal said nothing to Small before arresting him. Assuming these facts, a reasonable officer would not have believed he had probable cause to arrest Small for failure to disperse.

Small was charged with disorderly conduct. A person commits this simple misdemeanor when he or she

> 1. Engages in fighting or violent behavior in any public place or in or near any lawful assembly of persons . . . [,]
>
> 2. Makes loud or raucous noise in the vicinity of any residence or public building which causes unreasonable distress to the occupants thereof[, or]
>
> 3. Directs abusive epithets or makes any threatening gesture which the person knows or reasonably should know is likely to provoke a violent reaction by another.

**§ 723.4**. Viewing the facts most favorably to Small: He did not engage in any fighting or violent behavior. He did not make a loud or raucous noise or direct any abusive epithets; while some witnesses heard him shout an obscenity in general derogation of the County law enforcement, others heard nothing. He was walking away. Any gesture he made was not threatening. Assuming these facts, a reasonable officer would not have believed he had probable cause to arrest Small for disorderly conduct.

Small was charged with interference with official acts.

> 1. A person who knowingly resists or obstructs anyone known by the person to be a peace officer . . . in the performance of any act which is within the scope of the lawful duty or authority of that officer . . . or who knowingly resists or obstructs the service or execution by any authorized person of any civil or criminal process or order of any court, commits a simple misdemeanor. . . .
>
> . . . .
>
> 3. The terms "resist" and "obstruct," as used in this section, do not include verbal harassment unless the verbal harassment is accompanied by a present ability and apparent intention to execute a verbal threat physically.

**§ 719.1**. "One may 'resist' an officer under the Iowa statute without using physical force." ***Lawyer v. City of Council Bluffs***, 361 F.3d 1099, 1107 (8th Cir. 2004) (citing ***State v. Donner***, 243 N.W.2d 850, 854 (Iowa 1976); ***State v. Brecunier***, 564 N.W.2d 365 (Iowa 1997)). "[T]he term 'obstruct' is considered broader than 'resist,' and 'includes putting obstacles in the path of officers completing their duties.'" ***Id.***, *quoting **State v. Hauan***, 361 N.W.2d 336, 339 (Iowa Ct. App. 1984). "Verbal harassment" includes at least "taunting, criticizing, or leveling empty threats." ***Id.***

Viewing the facts most favorably to Small: He did not "resist" or "obstruct" the deputies in the performance of their duties. Some witnesses testified that Small had no interaction with the deputies before McCrystal tackled him. Others stated that he shouted an obscenity. Even if he shouted an obscenity, it was verbal harassment, and because he was walking away, the shout was not "accompanied by a present ability and apparent intention to execute a verbal threat physically." **§ 719.1(3)**. Assuming these facts, a reasonable officer would not have believed he had probable cause to arrest Small for interference with official acts.

McCrystal argues that when he arrested Small, it was not clearly established whether verbal harassment combined with a failure to disperse amounted to interference with official acts, noting that this question was settled by *State v. Parsons*, No. 09-1438, 2010 WL 2757189, at *4 (Iowa Ct. App. July 14, 2010). McCrystal misses the mark. Assuming the facts above, Small did not verbally harass McCrystal, and no probable cause existed to believe that Small failed to disperse. Even if McCrystal reasonably believed that verbal harassment combined with failure to disperse amounted to interference with official acts, a reasonable officer would not have believed Small had verbally harassed him and failed to disperse.

McCrystal is not entitled to summary judgment based on qualified immunity from Small's claim of unlawful arrest.

B.

Small contends that McCrystal used excessive force against him in violation of the Fourth Amendment. The right to be free from excessive force in the context of an arrest is clearly established under the Fourth Amendment. *Henderson v. Munn*, 439 F.3d 497, 503 (8th Cir. 2006). "[T]he test is whether the amount of force used was objectively reasonable under the particular circumstances." *Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009), *quoting Henderson*, 439 F.3d at 502. Relevant circumstances include "the severity of the crime at issue, whether the suspect

poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). "[F]orce is least justified against nonviolent misdemeanants who do not flee or actively resist arrest and pose little or no threat to the security of the officers or the public." *Brown*, 574 F.3d at 499; *see **Kukla v. Hulm***, 310 F.3d 1046, 1050 (8th Cir. 2002).

Viewing the facts most favorably to Small: He was charged with nonviolent misdemeanors. He did not pose an immediate threat to the safety of the officers or others. He was walking away from them, toward his trailer. He was not in flight or resisting arrest. McCrystal had not advised him he was under arrest. It was unreasonable for McCrystal to use more than de minimis force against Small by running and tackling him from behind without warning. *See **Shannon v. Koehler***, 616 F.3d 855, 863 (8th Cir. 2010); *Bauer v. Norris*, 713 F.2d 408, 412-13 (8th Cir. 1983) (establishing that no use of force was reasonable where the plaintiffs were charged with disorderly conduct, there was no evidence that any crime had been committed, and no evidence that the plaintiffs physically resisted or threatened the officer – even though the plaintiffs were "argumentative, vituperative, and threatened legal action").

McCrystal and the County argue that when force was used, "a reasonable officer could have believed that as long as he did not cause more than de minimis injury to an arrestee, his actions would not run afoul of the Fourth Amendment." *See Chambers v. Pennycook*, 641 F.3d 898, 908 (8th Cir. 2011). Viewing the facts most favorably to Small: McCrystal tackled him and his face landed on the gravel parking lot, resulting in three lacerations above his eye that covered his face with blood. Small was taken to the hospital in an ambulance, where the lacerations were treated without stitches. In this case, Small suffered more than a de minimis injury. *See Copeland*, 613 F.3d at 881 (holding that cuts, abrasions, and an injury to the knee support a finding of excessive force); *Lambert v. City of Dumas*, 187 F.3d 931, 936 (8th Cir. 1999) (holding that a single small cut on the eyelid and small scrapes of the knee and calf support a finding of excessive force); *Dawkins v. Graham*, 50 F.3d 532, 535 (8th

Cir. 1995) (holding that bruises and a facial laceration support a finding of excessive force); *cf. **Wertish v. Krueger***, 433 F.3d 1062, 1067 (8th Cir. 2006) (holding that "relatively minor scrapes and bruises and the less-than-permanent aggravation of a prior shoulder condition" were de minimis injuries).

McCrystal is not entitled to summary judgment based on qualified immunity from Small's claim of excessive force.

### C.

The Warrant Plaintiffs allege that the deputies violated their Fourth Amendment rights by arresting them without probable cause. They argue that the deputies' false reports deceived the prosecutors (who filed the warrant affidavits) and the magistrates (who issued the warrants), and that considering only truthful information, there was no probable cause to arrest them.

"[I]t is clearly established that the Fourth Amendment requires a warrant application to contain a truthful factual showing of probable cause . . . ." ***Hunter v. Namanny***, 219 F.3d 825, 831 (8th Cir. 2000). "A warrant based upon an affidavit containing 'deliberate falsehood' or 'reckless disregard for the truth' violates the Fourth Amendment." ***Bagby v. Brondhaver***, 98 F.3d 1096, 1098 (8th Cir. 1996), *quoting **Franks v. Delaware***, 438 U.S. 154, 171 (1978).

The intervening act of a prosecutor, magistrate, or grand jury may relieve an officer of liability for a false arrest. *See **Ames v. United States***, 600 F.2d 183, 185 (8th Cir. 1979). Officers remain liable, however, for the reasonably foreseeable acts of actors they deceive. *See **id.*** (holding that a grand jury indictment breaks the chain of causation between the officer's act and the institution of criminal proceedings "absent any specific allegation, such as the presentation of false evidence or the withholding of evidence"); ***Evans v. Chalmers***, ___ F.3d ___, 2012 WL 6554846, at *6-7 (4th Cir. Dec. 17, 2012); ***Sykes v. Anderson***, 625 F.3d 294, 314-15 (6th Cir.

2010); *Higazy v. Templeton*, 505 F.3d 161, 177 (2d Cir. 2007); *Borunda v. Richmond*, 885 F.2d 1384, 1390 (9th Cir. 1988); *Jones v. City of Chicago*, 856 F.2d 985, 993-94 (7th Cir. 1988); *Hand v. Gary*, 838 F.2d 1420, 1427-28 (5th Cir. 1988). An officer may be liable for an unlawful arrest despite a magistrate's authorization where "a reasonably well-trained officer . . . would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." *Malley v. Briggs*, 475 U.S. 335, 344-45 & n.7 (1986). "[T]he fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner . . . . Nonetheless, . . . the fact that a neutral magistrate has issued a warrant authorizing the allegedly unconstitutional search or seizure does not end the inquiry into objective reasonableness." *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1245 (2012) (internal citation and footnote omitted). "Where the judicial finding of probable cause is based solely on information the officer knew to be false or would have known was false had he not recklessly disregarded the truth, not only does the arrest violate the fourth amendment, but the officer will not be entitled to good faith immunity." *Myers v. Morris*, 810 F.2d 1437, 1457 (8th Cir. 1987) (quoting *Olson v. Tyler*, 771 F.2d 277, 282 (7th Cir. 1985)), *abrogated on other grounds by Burns v. Reed*, 500 U.S. 478 (1991).

The deputies discussed the events and filed police reports within 24 hours of the 911 call. After filing their original reports, the deputies again discussed the events and supplemented their reports: McCrystal supplemented his original report 14 days later; Trobaugh supplemented his original report 11 days later and again 25 days later. Each supplemental report raised allegations against new parties, many of whom are Warrant Plaintiffs. Each supplemental report requested that the prosecutor seek arrest warrants for the named individuals. The reports state facts that closely match the prosecutors' warrant affidavits.

The prosecutors' warrant affidavits describe a violent scene. The warrants for Pomranky, Lee, Hopkins, Gamboa, Palmer, and Flanders charged disorderly conduct, unlawful assembly, and failure to disperse. Each affidavit states, "There were

approximately 150 persons present and multiple fights going on," and: "The Defendant was told multiple times that [he or she] needed to leave. [He or she] continued with [his or her] rant of profanities and kept trying to antagonize [one or both deputies]." Each asserts that the defendant screamed. Warrants for Mertz and Heck charged assault on a peace officer. Each affidavit states that approximately 150 to 200 people were present at the golf course when the deputies arrived, a number of whom were fighting. The affidavit for Heck's warrant states that she "jumped on Deputy McCrystal's back" and "placed her arm around Deputy McCrystal's neck in a choke hold." The affidavit for Mertz's warrant states that she "pushed Deputy Trobaugh."

Witnesses disagree with the McCrystal/Trobaugh version in the prosecutors' affidavits. One testified that approximately 30 to 50 people remained outside when the deputies arrived. Another saw "a few scattered people" outside near where Small was arrested – "maybe ten" – and "a few more" in the distance. Others testified that no fights were going on when the deputies arrived, that there was no group "acting in a violent manner," that there was no yelling or screaming, that Heck did not jump on McCrystal, and that Mertz did not push Trobaugh. According to sworn testimony, the deputies' reports falsely stated what witnesses said and did.

Viewing the facts most favorably to the Warrant Plaintiffs: McCrystal arrested Small with excessive force, without probable cause, and in front of witnesses who expressed displeasure. The deputies then filed (and supplemented) their reports, which tripled the largest crowd estimate of other witnesses, exaggerated the noise and violence of the crowd, and fabricated violent physical contact by Mertz and Heck. Given the deputies' stated intent that the prosecutor seek warrants against those named

-11-

in the reports, they should have reasonably foreseen that the prosecutor would do so.[2] *Higazy*, 505 F.3d at 177. These facts state a claim for false arrest.

The deputies may nonetheless claim qualified immunity "if all the false and reckless portions of a warrant affidavit are corrected and the corrected affidavit still supports a finding of probable cause." *Bagby*, 98 F.3d at 1099; *see also* *Hunter*, 219 F.3d at 829; *Franks*, 438 U.S. at 171-72. Viewing the facts most favorably to the Warrant Plaintiffs: The reconstructed warrant affidavits should reflect the testimony of the witnesses described above. Because there was no group of "three or more persons assembled together, with them or any of them acting in a violent manner, and with intent that they or any of them will commit a public offense," there was no unlawful assembly. **Iowa Code § 723.2**. Because there was no unlawful assembly or riot, there was no failure to disperse. **§ 723.3**. Because there was no fighting, yelling, screaming, or violent behavior, there was no disorderly conduct. **§ 723.4**. Because neither Heck nor Mertz committed an act intending to cause pain, injury, physical contact, or the fear of any of them to the deputies, there was no assault. **§§ 708.1, 708.3A(4)**. Assuming these facts, the reconstructed affidavits do not state probable cause to believe that the Warrant Plaintiffs committed the crimes charged.

*Bernini v. City of St. Paul*, 665 F.3d 997, 1003 (8th Cir. 2012), does not help the deputies. The *Bernini* case, involving a "large and potentially riotous group," held that the officers could have reasonably concluded that the group, acting as a unit, had

---

[2]Trobaugh's brief asserts that "the evidence demonstrated that the Woodbury County Attorney's Office spoke with a witness at the scene, Wes Lloyd." At state trial, Lloyd answered affirmatively the question: "Have you given a statement of any kind to the county attorney or the police department or the sheriff's department in this case?" This is at best ambiguous. This court, considering the record most favorably to the plaintiffs, declines Trobaugh's interpretation. Trobaugh's conclusion that "the prosecutors did not rely exclusively on the deputies' reports before making the decision to file charges" has no unambiguous support in the record.

committed a crime and that the Fourth Amendment did not require a probable cause determination for each individual. *Id.* at 1003-04. In this case, viewing the facts most favorably to the plaintiffs, there was no group acting as a unit, far fewer people than in *Bernini*, and no probable cause to believe those people were committing a crime. The defendants' reliance on *Bernini* is misplaced.

The deputies are not entitled to summary judgment based on qualified immunity from the plaintiffs' claim of unlawful arrest of the Warrant Plaintiffs.

D.

The plaintiffs allege that the deputies induced their prosecution in retaliation for speech protected by the First Amendment.[3] "[T]he law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006). "To prevail on a First Amendment retaliation claim, the plaintiffs must show that they engaged in protected activity, that the defendants' actions caused an injury to the plaintiffs that would chill a person of ordinary firmness from continuing to engage in the activity, and that a causal connection exists between the retaliatory animus and the injury." *Bernini*, 665 F.3d at 1007. "Retaliation need not have been the sole motive, but it must have been a 'substantial factor' in those decisions." *Kilpatrick v. King*, 499 F.3d 759, 767 (8th Cir. 2007). "[A] retaliatory motive on the part of an official urging prosecution combined with an absence of probable cause supporting the prosecutor's decision to go forward are reasonable grounds to suspend the presumption of regularity behind the charging decision." *Hartman*, 547 U.S. at 265.

---

[3]Contrary to Trobaugh's assertion, plaintiffs' amended complaint does allege a claim of retaliatory inducement to prosecute in violation of the First Amendment.

Viewing the facts most favorably to the plaintiffs: McCrystal arrested Small with excessive force, without probable cause, and in front of witnesses who expressed displeasure. The deputies then filed (and supplemented) their reports, which tripled the largest crowd estimate of other witnesses, exaggerated the noise and violence of the crowd, fabricated violent physical contact by Mertz and Heck, and asked the prosecutor to seek warrants against members of the crowd who were "verbally abusive." Assuming these facts, there was no probable cause to arrest any of the Warrant Plaintiffs. *See id.* Nonetheless, warrants issued, they were arrested, and some were tried. These facts state a claim for retaliatory inducement to prosecute. *Id.* (holding that a showing of retaliatory motive on the part of the official urging prosecution, combined with an absence of probable cause, is "enough for a prima facie inference that the unconstitutionally motivated inducement infected the prosecutor's decision to bring the charge").

The plaintiffs in *Green v. Nocciero*, 676 F.3d 748, 753 (8th Cir. 2012), and *Baribeau v. City of Minneapolis*, 596 F.3d 465, 481 (8th Cir. 2010), failed to show that the defendants violated their clearly established First Amendment rights. Green "presented no facts, only his own unsupported belief" of retaliatory animus by the officers. *Green*, 676 F.3d at 753. In *Baribeau*, there was "no evidence to suggest that the decision to arrest the plaintiffs for displaying simulated WMD was not based on an actual but overly exaggerated belief that the plaintiffs violated the WMD statute." *Baribeau*, 596 F.3d at 481. Unlike in *Green* and *Baribeau*, the plaintiffs present evidence that the deputies acted in retaliation for the plaintiffs' "verbally abusive" speech about McCrystal's arrest of Small.

The deputies are not entitled to summary judgment based on qualified immunity from the plaintiffs' claim of retaliatory inducement to prosecute.

E.

According to the plaintiffs, the deputies conspired to wrongfully arrest the Warrant Plaintiffs in violation of the Fourth Amendment and to retaliate for protected speech in violation of the First Amendment. The deputies respond that the plaintiffs do not identify any facts showing a meeting of the minds among the defendants.

At times, Trobaugh asks this court to exceed its interlocutory jurisdiction. For example:

> The Plaintiffs in this instant action have merely set forth conclusory allegations in their complaint. They failed to allege any facts tending to show a meeting of the minds amongst the Defendants. The Plaintiffs' conspiracy theory is premised on their belief that there must have been a conspiracy between the Defendants because the Defendants' version of the facts differs from theirs. However, other witnesses and law enforcement personnel who were present at the scene support a version of the facts which is more consistent with the facts described by the Defendants.

This court has no interlocutory jurisdiction "if what is at issue in the sufficiency determination is nothing more than whether the evidence could support a finding that particular conduct occurred." *Behrens v. Pelletier*, 516 U.S. 299, 313 (1996); *Felder v. King*, 599 F.3d 846, 849 (8th Cir. 2010). Jurisdiction extends only to the legal question whether, taking the evidence most favorably to the plaintiffs, they have alleged a violation of clearly established constitutional rights. *McCaster*, 684 F.3d at 745-46. This court will consider the appeal to that extent only.

The plaintiffs must show (1) that a defendant conspired with others to deprive them of constitutional rights, (2) that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy, and (3) that the overt act injured the plaintiffs. *White v. McKinley*, 519 F.3d 806, 814 (8th Cir. 2008). Evidence

of an agreement to deprive a plaintiff of constitutionally guaranteed rights is typically circumstantial. *Livers v. Schenck*, 700 F.3d 340, 361 (8th Cir. 2012). "The question of the existence of a conspiracy to deprive the plaintiffs of their constitutional rights should not be taken from the jury if there is a possibility the jury could infer from the circumstances a 'meeting of the minds' or understanding among the conspirators to achieve the conspiracy's aims." *White*, 519 F.3d at 816, *quoting Larson by Larson v. Miller*, 76 F.3d 1446, 1458 (8th Cir. 1996) (Floyd R. Gibson, J., concurring in part and dissenting in part). "The court must be convinced that the evidence presented is insufficient to support any reasonable inference of a conspiracy." *Id.*, *quoting Westborough Mall, Inc. v. City of Cape Girardeau*, 693 F.2d 733, 743 (8th Cir. 1982).

Viewing the facts most favorably to the plaintiffs: The deputies arrested the Warrant Plaintiffs without probable cause and in retaliation for protected speech. The deputies conversed before writing their original reports and again before filing their first supplements. The deputies' reports and supplements are strikingly similar but bear little resemblance to the testimony of numerous witnesses. These facts state a claim that the deputies conspired to fabricate reports seeking warrants against the Warrant Plaintiffs, that both took an overt act to further the conspiracy, and that the plaintiffs were harmed. The deputies are not entitled to summary judgment based on qualified immunity from the plaintiffs' claim of conspiracy under § 1983.

## III.

The plaintiffs allege state law claims of assault and battery, malicious prosecution, abuse of process, and civil conspiracy. The deputies appear to challenge the district court's denial of summary judgment as to the malicious prosecution, abuse of process, and conspiracy claims.[4]

---

[4]Trobaugh argues that "he is entitled to qualified immunity on Plaintiffs' state law claims of malicious prosecution and abuse of process insofar as they are collateral

-16-

"Usually [this court's] jurisdiction on interlocutory appeal is limited to the resolution of the issue of qualified immunity, and [it] may not consider summary judgment on the merits of the case . . . ." *Lockridge v. Bd. of Trs. of Univ. of Ark.*, 315 F.3d 1005, 1012 (8th Cir. 2003) (en banc) (internal quotation marks omitted). It may, however, decide "closely related issues of law," if the otherwise nonappealable decision is "inextricably intertwined" with the appealable decision. *Kincade v. City of Blue Springs, Mo.*, 64 F.3d 389, 394 (8th Cir. 1995). "An issue is 'inextricably intertwined' with properly presented issues only when the appellate resolution of the collateral appeal necessarily resolves the pendant claims as well." *Lockridge*, 315 F.3d at 1012 (internal quotation marks omitted).

In Iowa, the elements of action for malicious prosecution are: (1) a previous prosecution, (2) instigation or procurement thereof by the defendant, (3) termination of the prosecution by an acquittal or discharge of plaintiff, (4) want of probable cause, and (5) malice in bringing the prosecution on the part of the defendant. *Reed v. Linn Cnty.*, 425 N.W.2d 684, 686 (Iowa 1988). In an action against a public official, the plaintiff must prove that the defendant acted with "actual malice." *Id.* This court's qualified-immunity determination does not necessarily require addressing whether the deputies acted with "actual malice" under Iowa law. The deputies' appeal of the denial of summary judgment on the malicious prosecution claim is dismissed for lack of jurisdiction.

In Iowa, the elements of the tort of abuse of process are: (1) the use of legal process (2) in an improper or unauthorized manner (3) that causes the plaintiff to suffer damages as a result of that abuse. *Gibson v. ITT Hartford Ins. Co.*, 621 N.W.2d 388, 398 (Iowa 2001). The plaintiff must prove that the defendant used the legal process *primarily* for an impermissible or illegal motive. *Wilson v. Hayes*, 464 N.W.2d 250,

---

the [sic] Plaintiffs' 42 U.S.C. § 1983 claims." Trobaugh cites no authority that extends the defense of qualified immunity to state-law claims.

266 (Iowa 1990). This court's qualified-immunity determination does not necessarily require addressing whether the deputies used legal process *primarily* for an impermissible or illegal motive. The deputies' appeal of the denial of summary judgment on the abuse-of-process claim is dismissed for lack of jurisdiction.

In Iowa, "[a] conspiracy is a combination of two or more persons by concerted action to accomplish an unlawful purpose, or to accomplish by unlawful means some purpose not in itself unlawful." **Basic Chems., Inc. v. Benson**, 251 N.W.2d 220, 232 (Iowa 1977). "[C]onspiracy is merely an avenue for imposing vicarious liability on a party for the wrongful conduct of another with whom the party has acted in concert." **Wright v. Brooke Grp. Ltd.**, 652 N.W.2d 159, 172 (Iowa 2002). This court's qualified-immunity determination does not necessarily require addressing whether a conspiracy to arrest the Warrant Plaintiffs without probable cause and in retaliation for protected speech is a conspiracy "to accomplish an unlawful purpose" under Iowa law. The deputies' appeal of the denial of summary judgment on the civil conspiracy claim is dismissed for lack of jurisdiction.

\* \* \* \* \* \* \*

The judgment of the district court is affirmed.

_____