# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-1142

_____

Chelsea Bechman

*Plaintiff - Appellee*

v.

Mitchell A. Magill; Eric D. Butler

*Defendants - Appellants*

City of Cedar Rapids, Iowa; Anita Parvin; Linda Sturbaum; Linn County IA

*Defendant*s

_____

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids

_____

Submitted: December 18, 2013
Filed: March 11, 2014

_____

Before RILEY, Chief Judge, WOLLMAN and LOKEN, Circuit Judges.

_____

RILEY, Chief Judge.

Late in the evening of March 29, 2009, Chelsea Bechman was at home, nursing her ten-month-old infant, when two Cedar Rapids, Iowa, police officers arrived at her

door. The officers arrested Bechman, leading her out of her home in handcuffs on what would be identified the next morning as an invalid, recalled arrest warrant for failure to appear to contest a simple traffic violation: no proof of insurance. Bechman sued the officers pursuant to 42 U.S.C. § 1983 for violating her constitutional right to be secure against unreasonable seizure. The district court[1] denied the officers qualified immunity, and the officers filed this interlocutory appeal. Having appellate jurisdiction under 28 U.S.C. § 1291 and the collateral order doctrine, see Mitchell v. Forsyth, 472 U.S. 511, 530 (1985), we affirm.

## I.    BACKGROUND

### A.    Facts[2]

On March 29, 2007, in Cedar Rapids, Iowa, Chelsea Bechman was issued a traffic citation for failing to carry proof of insurance. She failed to appear or pay the fine, and a warrant was issued for her arrest. Bechman eventually appeared, and the Linn County District Court recalled the warrant on September 26, 2008. The Linn County District Court faxed the warrant recall information to the Cedar Rapids Police Department that same day.

On the evening of March 29, 2009, Cedar Rapids Police Officer Mitchell A. Magill was on duty as a patrol officer. Around 9:00 p.m., Officer Magill observed

---

[1]The Honorable Edward J. McManus, United States District Judge for the Northern District of Iowa.

[2]"For this interlocutory appeal of the district court's denial of qualified immunity, . . . we accept the district court's findings of fact, taken in the light most favorable to" the appellee, Bechman. Roberts v. City of Omaha, 723 F.3d 966, 969 n.1 (8th Cir. 2013). "'We conduct our review by accepting as true the facts that the district court specifically found were adequately supported, along with those facts that the district court likely assumed.'" Brown v. Fortner, 518 F.3d 552, 557-58 (8th Cir. 2008) (quoting Lockridge v. Bd. of Trs. of the Univ. of Ark., 315 F.3d 1005, 1008 (8th Cir. 2003) (en banc)).

Bechman's husband, Timothy Bechman, commit a traffic violation, and Officer Magill initiated a traffic stop. Timothy Bechman was driving Chelsea Bechman's car. From information gleaned from his squad car computer—referred to as a "hit"—Officer Magill learned about what he later described as a "possible" Linn County arrest warrant for Chelsea Bechman. Officer Magill's squad car computer identified the charge on the "possible" warrant: failure to carry proof of insurance. Timothy Bechman informed Officer Magill that Chelsea Bechman was at home.

After parting company with Timothy Bechman, Officer Magill called Officer Eric D. Butler to accompany him for assistance. Officers Magill and Butler proceeded to the Bechman home in separate squad cars. Officers Magill and Butler knocked at the door, and Chelsea Bechman (hereafter, Bechman) answered the door with her ten-month-old baby in her arms.

Officer Magill explained to Bechman the officers were there "in relation to a possible warrant." Officer Magill told Bechman the warrant was for "a failure to appear for fines for insurance." Bechman correctly advised Officers Magill and Butler the matter had been resolved and the warrant had been recalled. Officer Magill called the Cedar Rapids Police Department to "check through dispatch to learn whether [the warrant] was still valid." The dispatcher did not verify the warrant was still valid. According to the transcript of the call, the dispatcher told Officer Magill, "Linn County is going to go ahead and fax over the hit confirmation to the Hinzman Center and the jail will go ahead and take her there and then they'll double check with . . . the Clerk's office on Monday morning reference [sic] the warrant, but they're going to fax over the hit confirmation to the jail so you can go ahead and take her there." In Officer Magill's words, "the Sheriff's office would confirm the existence of the warrant with the Clerk of Court the next morning." Officer Magill did not have any reason to arrest Bechman other than the unverified "possible" warrant.

While the officers were in Bechman's home, Bechman told the officers she was breast feeding her infant daughter and she needed to use the bathroom because she was menstruating. The officers refused to allow Bechman to use the bathroom without the door open and one of the two male officers watching. Bechman had no choice but to use the bathroom with Officer Butler observing her from the hallway. In addition, these male officers would not allow Bechman to exchange her breast milk soaked shirt for a dry one, or to put on a bra, unless one of them watched her change her clothes. She declined to do so.

Leaving the baby with Bechman's husband, Officer Magill handcuffed Bechman, led her to his squad car, and drove her to the jail. At the jail, Bechman was strip searched and given a body cavity search. Bechman was detained at the jail overnight—the first time she had been separated from her nursing infant. The jailers released Bechman the next morning.

## B.    Procedural History

Bechman sued Officers Magill and Butler and the City of Cedar Rapids, asserting various federal and state law claims.[3] Officers Magill and Butler and the City of Cedar Rapids moved for summary judgment. After the district court granted a summary judgment in part, the following claims remained: (1) whether Officers Magill and Butler, as individuals, violated Bechman's right to be free from unreasonable seizure guaranteed by the Fourth and Fourteenth Amendments; and (2) whether the officers and the City of Cedar Rapids committed state law tort claims of false arrest and invasion of privacy. Officers Magill and Butler filed this interlocutory appeal challenging the district court's denial of qualified immunity on the unreasonable seizure claim.

---

[3]Bechman also sued Linn County defendants, with whom she settled within a month of filing her complaint.

## II. DISCUSSION

### A. Standard of Review

A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "We review 'de novo a denial of summary judgment on grounds of qualified immunity.'" Stoner v. Watlingten, 735 F.3d 799, 802 (8th Cir. 2013) (quoting Small v. McCrystal, 708 F.3d 997, 1003 (8th Cir. 2013)).

### B. Qualified Immunity and Unreasonable Seizure

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "A right is clearly established if its contours are 'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Mitchell v. Shearrer, 729 F.3d 1070, 1076 (8th Cir. 2013) (quoting Anderson v. Creighton, 483 U.S. 635 (1987)).

"'It is well established that a warrantless arrest without probable cause violates an individual's constitutional rights under the Fourth and Fourteenth Amendments.'" Walker v. City of Pine Bluff, 414 F.3d 989, 992 (8th Cir. 2005) (quoting Hannah v. City of Overland, Mo., 795 F.2d 1385, 1389 (8th Cir. 1986)). "Because the qualified immunity privilege extends to a police officer who is wrong, so long as he is reasonable, the governing standard for a Fourth Amendment unlawful arrest claim 'is not probable cause in fact but arguable probable cause . . . that is, whether the officer should have known that the arrest violated plaintiff's clearly established right.'" Id. (omission in original) (quoting Habiger v. City of Fargo, 80 F.3d 289, 295 (8th Cir. 1996)).

The officers here concede no valid warrant existed at the time they arrested Bechman. They also concede there was no other probable cause for Bechman's arrest. In their defense, the officers cite several cases where an officer made an arrest on a warrant that had been recalled, and a court found the officer's actions reasonable under the circumstances. In each cited case, the officer was informed, albeit mistakenly, that the warrant was still outstanding. See, e.g., Arizona v. Evans, 514 U.S. 1, 4, 15-16 (1995) ("The computer inquiry confirmed that respondent's license had been suspended and also indicated that there was an outstanding misdemeanor warrant for his arrest. Based upon the outstanding warrant, [the officer] placed respondent under arrest. . . . There is no indication that the arresting officer was not acting objectively reasonably when he relied upon the police computer record."); Edwards v. Baer, 863 F.2d 606, 608-09 (8th Cir. 1988) ("Based upon [the plaintiff's] representation that the warrant was no longer valid, [the officer] contacted the [local] Police Department on two separate occasions and, in each instance, was informed that the arrest warrant continued to be outstanding. [The officer] arrested [the plaintiff] based upon this information of the existence of a valid warrant."); Mason v. Vill. of Babylon, N.Y., 124 F. Supp. 2d 807, 810, 815 (E.D.N.Y. 2000) ("Once Plaintiff was pulled over, [the officer] communicated with a police dispatcher and was informed that there was an outstanding warrant for Plaintiff's arrest. Upon learning of the warrant, [the officer] took Plaintiff into custody and transported her to the [local] Precinct.").

In contrast, the only "fact[] known to" Officers Magill and Butler, Kiser v. City of Huron, S.D., 219 F.3d 814, 816 (8th Cir. 2000), was that Officer Magill's squad car computer returned a "hit" on Bechman. What does a "hit" mean? As the officers describe it, when Officer Magill "ran the license plate of the vehicle on his [squad] car computer, he learned of a *possible* outstanding warrant against the vehicle's owner, Chelsea Bechman." (Emphasis added). Unlike in Evans, the inquiry to the Cedar Rapids Police Department did not end with the search of the computer system. Officer Magill called the Cedar Rapids Police Department, as he put it, to "check

-6-

through dispatch *to learn whether [the warrant] was still valid*." (Emphasis added). The dispatcher did not supply him with any verification. Rather, again in Officer Magill's words, "the Sheriff's office would confirm the existence of the warrant with the Clerk of Court the next morning." At the time of Bechman's arrest, and in the face of Bechman's explanation that the traffic violation warrant was resolved, the "existence of the warrant" was *not* confirmed.

Officers Magill and Butler started their training at the Law Enforcement Academy to be certified as Cedar Rapids police officers in June 2008, around the time Cedar Rapids was inundated by a severe flood. During this initial training, Officer Magill first saw the "Procedures for Handling Warrants" general order issued by the Cedar Rapids Police Department (general order). The general order explains that a computer "hit" on the warrant database is not reason enough to make an arrest. On the contrary,

> A warrant entry will serve to notify the officer that there is a warrant issued against the subject and housed at our department. Mittimus are housed at the Linn County Sheriff's Department.
>
> a.    An immediate check by the dispatcher to the appropriate agency will determine that they do, in fact, have the original warrant or mittimus in hand.
>
> b.    When the officer is notified that they do, in fact, have the original warrant or mittimus, he/she will effect the arrest.
>
> c.    Should the appropriate agency be unable to locate the original warrant or mittimus, the subject will be informed that there is supposed to be a warrant issued on him/her and that it can't be found at this time; therefore, he/she is not going to be held further on the warrant or mittimus. The subject will then be released unless the officer has other charges or reasons for holding him/her.

> d. The warrant list or Sheriff's Computer shall not, in itself, be reason enough to arrest a subject. The officer <u>must</u> be notified that the Police Department, Sheriff's Office, or other agency <u>does</u> have the paperwork in hand and is valid.

The district court fairly exercised its discretion and considered this general order relevant in its determination of the objective reasonableness of the officers' actions.

The officers maintain that this court has previously stated, "A public official does not lose his qualified immunity merely because his conduct violates some statutory or administrative provision. Our analysis is instead guided by the fact that federal constitutional law does not require the actual possession of a warrant in cases *where the arresting officer has knowledge of its existence*." <u>Edwards</u>, 863 F.2d at 608 (emphasis added) (internal citation omitted). Officers Magill and Butler did *not* have knowledge of the Bechman warrant's existence. The "existence of the warrant," or the lack thereof, would not be checked until "the next morning."

The officers also contend Bechman's arrest warrant was issued before June 2008, the time of the flood, which caused "the destruction of most of the actual paper arrest warrants housed by the Linn County Sheriff," presumably including Bechman's. The officers argue they were unable to comply with the general order because "the paper warrants were gone." Yet Officers Magill and Butler admit the general order was still in effect on the day of Bechman's arrest, despite the flood the previous summer. The officers do not dispute that some method of warrant bookkeeping verification existed such that on the morning following Bechman's arrest and night in jail, she was released due to the discovery of the lack of a valid warrant.[4] The June 2008 Cedar Rapids flood did not suspend the Fourth Amendment.

---

[4]We are not asked to decide whether the existence of the actual paper warrant signed by the magistrate would have been required for a constitutional seizure.

-8-

The district court correctly determined that no reasonable police officer could actually believe Bechman's warrantless arrest was lawful, given the information supplied to the officers and the circumstances surrounding Bechman's arrest. "The Fourth Amendment, and the personal rights which it secures, have a long history. At the very core stands the right of a [woman] to retreat into [her] own home and there be free from unreasonable governmental intrusion." Silverman v. United States, 365 U.S. 505, 511 (1961).

Because we affirm the district court's denial of qualified immunity on the grounds of the warrantless arrest, we do not address whether the humiliating indignities suffered by Bechman as a result of these officers' conduct constitute an independent rationale for a § 1983 claim of unreasonable seizure.

III. CONCLUSION

We affirm.

_____